SHERMAN N. DOWSETT and CAROL C. DOWSETT, Plaintiffs-Appellees, *v.* JOHN H. CASHMAN, JR., and CORNELIA Z. CASHMAN, Defendants-Appellants

NO. 6962

APRIL 2, 1981

HAYASHI, C.J., PADGETT AND BURNS, JJ.

---

OPINION OF THE COURT BY BURNS, J.

This is an appeal from a cancellation of an agreement of sale of a leasehold condominium apartment.

The issues are whether we have jurisdiction to hear all aspects of the appeal and whether the lower court erred when it refused to allow the appellants-buyers to unilaterally revoke an agreement in compromise and settlement.

We affirm the lower court's decision.

By Agreement of Sale (A/S) dated February 1, 1974, the Dowsetts, as sellers, agreed to the sale of a leasehold condominium apartment located on Kauai, Hawaii, to the Cashmans, as buyers. The price was $42,500 with $5,300 cash down and the $37,200 balance payable at 8.5 percent per annum interest, via monthly payments of $334, payable on the 15th of each month, commencing February 25, 1974. These monthly payments were to be credited "first to an impound for the payment of taxes, maintenance charges and lease rent, then to interest and the balance, if any, to principal." The buyers were required to make additional payments of $4,124.33 on January 15, 1975, and January 15, 1976. Full payment was required on or before January 15, 1977.

The buyers made several irregular payments but did not make any payments after August 30, 1976.

The A/S provided that upon buyers' default the sellers were entitled to cancel the A/S and retain all payments of principal and interest to compensate for damages and loss of use.

On April 11, 1977, sellers filed their complaint asking for cancellation of the A/S, possession, damages, and to keep all payments made by buyers or, in the alternative, asking that the buyers be ordered to pay all amounts due under the A/S. The sellers also asked for an award of their costs and attorney's fees.

On June 15, 1977, buyers filed an answer in which they alleged that they were ready, willing, and able to perform all of their obligations pursuant to the A/S, subject to receipt of an accounting of charges accrued and of payments made to date.

Sellers' filed a statement of readiness on June 23, 1977. At a July 13, 1977, calendar call to set the case for trial, the matter was continued to August 24, 1977, with the understanding that the sellers would file a motion for summary judgment before that date.

On July 22, 1977, sellers moved for summary judgment. Buyers filed no papers in response to the motion for summary judgment and, at the August 8, 1977, hearing on the motion, the matter was continued to September 6, 1977.

On September 6, 1977, the buyers represented that a loan application was to go before the loan committee that afternoon, and the matter was put over to September 13, 1977. On September 13, 1977, the court was advised that the loan had been approved, but the matter was not yet settled and it was put over to November 1, 1977. On November 1, 1977, the sellers advised the judge that escrow had not closed and asked for cancellation. The court granted it, but the judge indicated that he would not sign the order for two weeks, thus allowing buyers two more weeks to close. The order was not signed until January 5, 1978, and judgment was not filed until January 18, 1978. The judgment cancelled the A/S, gave possession of the apartment back to the sellers, and did not give them any of the other relief which they had requested.

On February 15, 1978, the buyers filed a Hawaii Rules of Civil Procedure (HRCP), rule 60(b)(6) (1954), motion to vacate and set aside the January 18, 1978, Judgment Cancelling Agreement of Sale. An attached affidavit indicated that buyers paid $9,584.27, including closing costs, in 1974; $4,250.13 in 1975; and $7,350.00 in 1976; and that buyers were ready to pay all amounts due and to close escrow subject only to recordation of a certificate of release of federal tax lien. The judge orally denied this motion on February 16, 1978. The order denying the motion was filed on February 22, 1978.

On February 17, 1978, the buyers noticed on appeal the January 5, 1978, order, the January 18, 1978, judgment, and the February 16, 1978, oral order.

The first question, which we raise *sua sponte,* is whether we have jurisdiction to hear the appeal of the February 16, 1978, oral order and the corresponding February 22, 1978, written order when the notice of appeal was filed on February 17, 1978.

We hold that we have no jurisdiction to hear the appeal.

An appeal "shall be taken by filing a notice of appeal with the circuit court within 30 days from the entry of the judgment appealed from. . . ." HRCP, rule 73(a) (1954, as amended). "As stated in *State v. Bulgo,* 45 Haw. 501, 503, 370 P.2d 480, 482, 'entry' signifies something more formal than mere oral rendition of an order or ruling of the court. . . ." *Scott v. Liu,* 46 Haw. 221, 225-226; 377 P.2d 696, 700 (1962). Thus, the buyers' notice of appeal was a nullity, *Madden v. Madden,* 43 Haw. 148 (1959), and it was ineffective to give this court jurisdiction unless it was refiled within the proper appeal period. *Island Holidays, Inc. v. Fitzgerald,* 58 Haw 552, 574 P.2d 884 (1978). In *Re Dean Trust,* 47 Haw. 304, 387 P.2d 218 (1963), the fact that within the proper appeal period the appellants filed a supersedeas bond signed by themselves as principals, reciting when the judgment was entered and the fact that they had noticed an appeal from it, was held to be, in effect, a refiling. In this case, in the period thirty days from February 22, 1978, there is nothing in the record which we can appropriately construe as a refiling. Therefore, we hold that we are without jurisdiction to hear the appeal of the February 22, 1978, Order Denying Motion to Vacate and Set Aside Judgment.

We now consider the appeal of the January 18, 1978, judgment. The buyers contend that summary cancellation of the A/S is not authorized because *Jenkins v. Wise,* 58 Haw. 592, 574 P.2d 1337 (1978), requires that factual determinations be made before such action is taken; that the lower court was required to consider alternatives less harsh than cancellation, such as sale of the property; that the lower court should have required seller to pay to the buyer all equity in the property over and above the amounts due under the A/S; and that the lower court should have ordered the return of that portion of the purchase price already paid which was a penalty rather than reasonable liquidated damages for the breach.

Such contentions were not made at the lower court level. On the contrary, at the first hearing on the motion for summary judgment on August 8, 1977, the following dialogue occurred:

MR. CASHMAN: My name is John Cashman. I am an attorney licensed to practice in Hawaii, and I am here on my own behalf, and also my wife's.

[SELLERS' ATTORNEY]: The delinquency on the default in this matter, is admitted. Secondly, the defendant has asked for

this concession that if within thirty days he has not been able to pay the plaintiff, Mr. Dowsett, off in full, he will quitclaim the apartment back to Mr. Dowsett, and Mr. Dowsett has agreed to that. We have not worked out all of the details, but that's basically our agreement; is that correct?

\* \* \* \* \*

MR. CASHMAN: The understanding, Your Honor, is that we'll pay Mr. Dowsett whatever is owing once an accounting is agreed upon as to principal and interest which is due and owing to him. If the amount cannot be paid within 30 days, the understanding between the plaintiffs and the defendants, is that the defendants will quitclaim the property back to Mr. and Mrs. Dowsett, and that will be accompanied by a mutual release of all claims and a dismissal of this action.

THE COURT: In other words, cancellation on agreement of sale at that point, in effect.

[SELLERS' ATTORNEY]: Yes, and that would, of course, as I understand it, mean a forfeiture of what the defendants have paid in.

MR. CASHMAN: That's in consideration of the fact that Mr. Dowsett will not pursue the defendants for attorney's fees and so forth. We would each walk away from the transaction.

THE COURT: Okay, I'll put it over for one month, and if you cannot effect it, you can come back and I can cancel at that point; either way. You can either prepare a stipulation one way or the other or come back to Court and the Court will cancel it. That's just as easy. The matter will go over until the 6th of September — September 6 at 9 o'clock.

At the November 1, 1977 hearing, the following dialogue occurred:

[SELLERS' ATTORNEY]: \*\*\*We're still up in the air and the way the things are going, I think this is dragging on.

THE COURT: So what do you want to do?

[SELLERS' ATTORNEY]: We'd like to move for the cancellation, Your Honor.

THE COURT: Mr. Robinson.

[BUYERS' ATTORNEY]: The escrow is still open, Your Honor.

\*   \*   \*   \*   \*

THE COURT: \*\*\*The Court will agree the agreement of sale is cancelled. However, if you are satisfied within two weeks of the arrangements made and the checks don't bounce, then the Court will not sign the Order, but if otherwise, the Court will find that the defendants have breached the agreement of sale, that the terms of the sale have provided for cancellation, and the cancellation will be effected, and all rights, title, and interest of the defendants will be declared null and void, and the plaintiffs restored possession and all rights, title, and interest to said property.

That should be enough time, okay?

[BUYERS' ATTORNEY]: Okay.

The general rule is that a party appealing is precluded from raising for the first time on appeal a question not raised in the trial court. *Miller v. Leadership Hsg. Sys.*, 57 Haw. 321, 555 P.2d 864 (1976). In determining whether to exercise discretion to hear new issues, three factors to be taken into account are whether consideration of the issue requires additional facts; whether the resolution of the question will affect the integrity of the findings of fact of the trial court; and whether the question is of great public importance. *Earl M. Jorgensen Co. v. Mark Constr. Inc.*, 56 Haw. 466, 540 P.2d 978 (1975). Taking into account the three factors, we decline to hear the issues not raised in the lower court case.

Further, courts have the general power of entering judgment by consent of the parties for the purpose of executing a compromise and settlement of the action. 47 AM. JUR. 2d *Judgments* § 1080 (1969).

Although there is no case on point in Hawaii, the law of compromise and settlement and of judgment by consent is well-settled in other jurisdictions. For example, the Kansas Supreme Court has stated: "It is an elemental rule that the law favors compromise and settlement of disputes and generally, in the absence of bad faith or fraud, when parties enter into an agreement settling and adjusting a dispute, neither party is permitted to repudiate it." *Matter of Estates of Thompson*, 226 Kan. 437, 440, 601 P.2d 1105, 1108 (1979). The Washington Supreme Court said it even more tersely: "The law

favors settlements and consequently it must favor their finality."
*Haller v. Wallis,* 89 Wash. 2d 539, 544, 573 P.2d 1302, 1305 (1978).

A compromise agreement, like other contracts, requires an offer and acceptance, consideration, and parties who have the capacity and authority to agree as they do. 15A AM. JUR. 2d *Compromise and Settlement* § 7 (1976). A judgment or decree entered by consent of the parties is in the nature of a contract, approved by the court, and cannot be set aside except on grounds adequate to justify the rescission of a contract. *Nieminen v. Pitzer,* 281 Or. 53, 57, 573 P.2d 1227, 1228 (1978).

In the instant case, the above quoted extract from the August 8, 1977, hearing clearly indicates that the parties had entered into a compromise agreement, that there had been an offer and acceptance, and that the consideration was expressly noted. Certainly Mr. Cashman had the capacity to enter into such an agreement: As he stated to the court, he was a licensed attorney and had undertaken his own and his wife's representation.

It must also be noted that the Cashmans have not complained of any of the other circumstances, such as fraud, duress, or mistake, that would invalidate the agreement and the judgment based thereon, nor does the record reveal any such defect. On the contrary, the Dowsetts and the Cashmans, in open court, entered into what appears to be a voluntary, well-thought-out, and previously discussed agreement to settle their dispute. In response, the court quite properly indicated its approval of the agreement.

The Supreme Court of Colorado, quoting with approval from the case of *Hansen v. Ryan,* 186 S.W.2d 595 (Mo. 1945), held:

> "In the administration of justice and the prompt dispatch of business, courts must and do act upon the statements of counsel and upon the stipulations of parties to pending causes. Where the parties have voluntarily entered into a stipulation which appears fair and reasonable for the compromise and settlement of the issues of a pending cause and where the stipulation is spread upon the record with the consent and approval of the court, as here, the parties are bound thereby and the court may, thereafter, properly proceed to dispose of the case on the basis of the pleadings, the stipulations and the admitted facts."

*Goltl v. Cummings,* 152 Colo. 57, 380 P.2d 556, 559 (1963).

84

Here, the Cashmans agreed that if they did not make full payment in thirty days, then they would quitclaim the property back to the Dowsetts. Since the Cashmans did not pay the Dowsetts within thirty days — or, in fact, within the next five months — the lower court was authorized to cancel the A/S.

The Cashmans entered into a voluntary settlement agreement which was approved by the court. We hold that the lower court did not err when it refused to allow them to repudiate it.

Affirmed.

*Dennis C. H. Leong,* on the brief, for defendants-appellants.
*D. Barclay Bryan,* on the brief, for plaintiffs-appellees.