**Richard John LOGGHE, Appellant,**

v.

**Twila JASMER, Appellee.**

No. 6897.

Supreme Court of Alaska.

July 6, 1984.

Before BURKE, C.J., RABINOWITZ, MATTHEWS and COMPTON, JJ., and COOKE, Superior Court Judge.*

## OPINION

RABINOWITZ, Justice.

This appeal arose from an action to enforce an Oregon judgment for accrued and unpaid child support. Richard Logghe appeals from the superior court's interpretation of the Oregon decree. We affirm.

On March 19, 1976, an Oregon Circuit Court issued a Decree of Dissolution, declaring a dissolution of the marriage of Richard Logghe and Twila Jasmer on May 19, 1976. At the time of the dissolution, Logghe and Jasmer both lived in Portland, Oregon. They had one son, Adam Logghe.

The Decree of Dissolution noted that Logghe did not appear in the case, but had "signed the Decree approving it as to form ...." Logghe's default was "noted and duly entered on record ...." The decree awarded custody of Adam to Jasmer. Beginning April 1, 1976, Logghe was to pay $50 per month child support to the Oregon Department of Human Resources. He was awarded visitation rights with Adam each weekend. In the event visitation did not occur, paragraph 8 of the Oregon decree provided:

> Respondent [Logghe] shall pay to petitioner [Jasmer] $25.00 for each weekend without visitation, said payment to be for the benefit of a third person for child care expenses, unless that lack of visitation is by request of petitioner ....

There was no order that this $25.00 be paid to the Department of Human Resources nor was there any similar provision for monitoring payment. Logghe testified at trial that he and Jasmer understood that the purpose of paragraph 8 was to provide money to Jasmer's parents, who cared for Adam on weekends when both parents were busy. The decree also provided that

Drew Peterson, Ellis Law Offices, Inc., Anchorage, and Susan G. Whitney, Kobin & Meyer, P.C., Portland, Or., for appellant.

Gerald W. Markham, Kodiak, for appellee.

* Cooke, Superior Court Judge, sitting by assignment made pursuant to article IV, section 16, of the Constitution of Alaska.

Logghe and Jasmer could arrange other times for visitation by agreement.

In March 1976, shortly after the divorce, Logghe moved to Alaska. Jasmer left Oregon some time later. The court did not enter a finding of fact as to the actual year of her departure.[1] Jasmer returned to Portland the December before she departed for Kodiak, Alaska. By June 1979 she had moved to Kodiak. She remarried in 1981 and presently resides in Kodiak with her husband. Adam, who was eleven years old at the time of the Alaska trial, lives with Jasmer and her husband. Logghe also remarried in Alaska and he and his wife have two children. The family lives in Ketchikan.

Logghe exercised his visitation rights during the brief period between the divorce and his departure from Portland. On two or three occasions he paid Jasmer $25.00 for weekends that he did not visit with Adam. He traveled to Minnesota to see Adam for Thanksgiving in 1976 or 1977. Adam also spent three to five weeks with Logghe each summer from 1976 through 1980. Logghe substantially complied with the $50.00 per month child support provision until June or July 1978. Since that time, Jasmer has received nothing. Although Jasmer testified to making frequent demands for money, she said Logghe insisted both that he could not afford the payments and that she did not need them. Logghe testified that he stopped paying, and that visitation became impossible, because his ex-wife and son were often out of contact with him for months at a time. Logghe also testified that before he moved to Alaska, he and Jasmer agreed that thereafter weekend visitation would be impractical and they would attempt to arrange other visitation.

Jasmer filed suit to enforce the Oregon support decree in February 1980. In her complaint she sought to recover arrearages in child support based on the Oregon judgment, and requested an increase in Logghe's child support obligation. The complaint specifically alleged that Logghe owed child support of $25.00 per weekend for those weekends that he had failed to visit Adam. Although Logghe's motion for a change of venue from Kodiak to Ketchikan was denied, the superior court permitted Logghe to testify telephonically at the trial.

At the close of Jasmer's case, Logghe moved to dismiss the claims seeking payment for weekend child care. He claimed that weekend visitation had become impractical and asserted that Jasmer was required to prove actual weekend babysitting expenses to be entitled to $25.00 per weekend. The court denied the motion, construing the language in paragraph 8 as requiring payments for nonvisitation.

The superior court in its findings of fact and conclusions of law found that the termination of weekend visitation was due to impracticality resulting from Logghe's voluntary move to Alaska. Although the court did not find exactly when Jasmer left Oregon, it found she remained in Portland for "some time" after Logghe's permanent departure from Oregon. The superior court found that Adam visited Logghe a total of twenty-one weeks and two weekends, or twenty-three weekends. It found Logghe in contempt of the Oregon decree and sentenced him to twenty days in jail, but suspended the sentence on condition that he pay $50.00 per month towards the arrearage. The court concluded that the arrearage totalled $9,049.21, including prejudgment interest.[2] The judgment was based upon findings that Logghe was $1,900.00 in arrears on the $50.00 per month support obligation and $5,632.90 in arrears on the $25.00 per weekend provision of paragraph 8 of the decree, less credit for weekends Logghe actually spent

1. Jasmer was uncertain whether the move took place in 1977 or 1978. Logghe believes that Jasmer left Oregon in 1976.

2. This sum, together with a provision for postjudgment interest, constituted the final judgment. The judgment apparently contains a $.40 typographical error in favor of Jasmer and a $150.00 error in favor of Logghe. Jasmer noted in her brief that she had decided not to appeal the error in Logghe's favor.

with Adam. The superior court then modified the Oregon decree, increasing Logghe's child support obligation to $150.00 per month. The sole portion of the judgment Logghe challenges in this appeal is the arrearage which the superior court found had accrued under paragraph 8 of the decree.

## II.

Logghe and Jasmer agree that under the full faith and credit clause of the United States Constitution,[3] an Alaska court must enforce the Oregon decree according to its terms.[4] They differ, however, on the interpretation to be given to the term stated in paragraph 8. Logghe argues that the superior court erred in treating paragraph 8 as a child support provision. He contends that it was merely a contingent provision for reimbursement of actual child care expenses incurred when, at his own request, he did not exercise weekend visitation. He argues that he should not be held responsible for "arrearages" under paragraph 8, as Jasmer presented no evidence that such expenses were actually incurred, or that weekend visitation was practical.

■ The superior court construed paragraph 8 to require Logghe to pay child support for weekends when he did not care for Adam in the absence of a request by Jasmer that such visitation not take place. We agree with this interpretation of the Oregon decree, and affirm.

■ As noted above, paragraph 8 required Logghe to pay Jasmer

$25.00 for each weekend without visitation, said payment to be for the benefit of a third person for child care expenses
. . . .

While Logghe did not appear in the dissolution action in Oregon, he approved the judgment as to form in advance of the default hearing. Thus, the Oregon dissolution decree amounted to a consent judgment between Logghe and Jasmer. Such a judgment is in the nature of a contract that has been approved by the court. *Dowsett v. Cashman,* 2 Hawaii App. 77, 625 P.2d 1064, 1068 (1981); *Nieminen v. Pitzer,* 281 Or. 53, 573 P.2d 1227, 1228 (1978). When it is necessary to construe a consent judgment or decree, courts resort to ordinary principles of contract interpretation. *See United States v. ITT Continental Baking Co.,* 420 U.S. 223, 236–37, 95 S.Ct. 926, 934–35, 43 L.Ed.2d 148, 161–62 (1975); *Vertex Distributing, Inc. v. Falcon Foam Plastics, Inc.,* 689 F.2d 885, 892 (9th Cir. 1982); *United States v. Northern Colorado Water Conservancy District,* 608 F.2d 422, 430 (10th Cir.1979); *New York State Association for Retarded Children, Inc. v. Carey,* 596 F.2d 27, 37 (2d Cir.), *cert. denied* 444 U.S. 836, 100 S.Ct. 70, 62 L.Ed.2d 46 (1979).

■ While the $25.00 weekend payments were not labelled "child support," such payments were specifically intended to cover "child care expenses." That the payments were agreed to be "for the benefit of a third person" does not alter the nature of the expenses that they were intended to reimburse. Logghe's testimony at trial reflects his understanding that Jasmer's parents would care for Adam only if both he and Jasmer were not available. Since under paragraph 8 he would be obligated to pay $25.00 for every weekend that he could not care for Adam, it follows that those payments would only "benefit ... a third person" (i.e. Jasmer's parents) when Jasmer herself could not care for Adam. We conclude that the superior court correctly treated the weekend payments, like the monthly payments, as part of the child support obligation owed to Jasmer by Logghe.

■ Logghe argues that his move from Oregon to Alaska made compliance with paragraph 8 impractical. He also asserts

---

**3.** Article IV, § 1 of the United States Constitution provides, in relevant part, that "Full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other state."

**4.** *See Robbins v. Robbins,* 647 P.2d 589, 591 (Alaska 1982).

that Jasmer's permanent departure some time later certainly rendered compliance impractical, even if his previous move had not done so. Logghe contends that he should not be responsible for the $25.00 per weekend payment set out in paragraph 8 after he left Oregon, or at least after Jasmer moved permanently from that state. We cannot agree with this interpretation. The language of paragraph 8 is straightforward. Nowhere in that paragraph, nor indeed anywhere in the decree, is any geographic limitation set forth indicating that compliance with paragraph 8 would be excused upon the departure of either Logghe or Jasmer from Oregon.

Logghe also asserts that paragraph 8 provides only a conditional obligation on his part. According to Logghe, the $25.00 weekend payments were intended to provide reimbursement for actual child care expenses. Logghe contends that in the absence of proof of such expenses, he had no obligation to pay $25.00 for each weekend that he did not visit Adam.

In interpreting this judgment as we would a contract, we note the well-settled rule of contract interpretation that conditions are disfavored and will not be found in the absence of unambiguous language indicating the intention to create a conditional obligation. *In re Bubble Up Delaware, Inc.*, 684 F.2d 1259, 1264 (9th Cir. 1982); *Uniroyal, Inc. v. Heller*, 65 F.R.D. 83, 93 (S.D.N.Y.1974); *see Prager's, Inc. v.*

*Bullitt Co.*, 1 Wash.App. 575, 463 P.2d 217, 222 (1969); 3A A. Corbin, Corbin on Contracts § 635 (1960); 5 S. Williston, A Treatise on the Law of Contracts § 665 (W. Jaeger 3d ed. 1961). No such language appears in paragraph 8. It would not have been difficult for the parties to have inserted conditional language. A provision that Logghe was required to reimburse Jasmer "up to $25.00 per weekend" might signal such a contingency, as might the inclusion of a formal mechanism to advise Logghe of money actually spent by Jasmer on child care. Instead, the paragraph indicates that the money is to be "for the benefit of a third person for child care expenses ...." This language merely explains the purpose behind the provisions of paragraph 8.[5] This purpose does not convert an absolute obligation to pay $25.00 per weekend when Logghe failed to visit Adam into a mere conditional obligation.

Thus, we reject Logghe's contentions that the trial court erred in regard to its construction and application of paragraph 8 of the decree.

### III.

At trial, Logghe testified that for various periods totaling fifteen months, he did not know the whereabouts of Jasmer and Adam. He thus concludes that his lack of visitation for sixty weekends was the direct result of Jasmer's failure to inform Logghe

---

**5.** Moreover, Logghe's testimony at trial does not indicate any conditional intention by the parties in adopting paragraph 8. Instead, his testimony supports the interpretation that the phrase upon which he relies is merely explanatory in nature:

Q. And what was that money for, the $25.00?
A. Well, I—I—I—it would go to Twila's mother and that was essentially the agreement, that she was the third party.
Q. Okay. And what was that for? I mean why did you give it to her mother?
A. Well, her parents didn't have much money and it just kind of helped out them a little bit when—when they took Adam on the weekend.
. . . .
Q. At the time the divorce became final what was your understanding as to the $25.00 provision, number 8?

A. Well, that basically it was just for babysitting on weekend if—if neither Twila nor—nor I, you know, were available to take care of Adam, if both of us had something to do, that he would spend the time with his—with his grandma and then—you know, and then (inaudible) pay the money for—to—to grandma for babysitting.
Q. Okay. So it was not your understanding—excuse me—it was your understanding that it was not child support as we (inaudible) understand that term. correct?
A. Right.
Nowhere does Logghe assert that it was both parties' intention that the provisions of paragraph 8 were conditional upon actual child care expenses. Rather, he indicates his understanding that the purpose of paragraph 8 was to reimburse Jasmer for child care expenses incurred by her parents.

of her location. He contends that such failure amounted to a "request" within the meaning of paragraph 8, so that payment of $25.00 is excused for each of these sixty weekends.

■ We agree with Jasmer that this lack of contact did not excuse Logghe's obligation to pay the weekend support. The record contains no evidence that Logghe would have exercised his weekend visitation privileges had he known the whereabouts of Jasmer and Adam during these sixty weekends. Nor is there any evidence that this lack of contact amounted to an attempt by Jasmer to deny Logghe the right to visit their child. We do not believe that Jasmer's failure to inform Logghe of her location amounted to a "request" within the meaning of the final phrase of paragraph 8. Therefore Logghe was not excused from payment of the weekend support during these sixty weekends.

### IV.

We turn now to the question of whether Logghe should receive a credit of $25.00 for each two days that Adam spent with him while Jasmer resided in Portland, regardless of whether those two days occurred on weekends. The court allowed credit for only the weekends that Adam actually spent with Logghe. Logghe challenges this ruling, contending that there is no difference in babysitting expenses for two weekend days as opposed to two days during the week. Thus, he demands an equitable credit of $25.00 for each two days of actual visitation.

■ We do not believe that the terms of the dissolution decree permit Logghe such a credit. Paragraph 6 provides that Logghe is to have weekend visitation with Adam. It then states that "[a]dditional visitation periods may be arranged by agreement between the parties ...." Paragraph 8 provides in part that "[r]espondent shall pay to petitioner $25.00 for *each weekend* without visitation ...." (emphasis added). These two provisions, when read together, indicate that although Logghe was entitled to arrange additional

visitation with Jasmer, the $25.00 per weekend child support obligation was to be forgiven only on those *weekends* when Adam visited Logghe. Therefore, Logghe is entitled to no credit for non-weekend days on which he exercised his visitation privileges.

### V.

■ In December 1980 Logghe's home near Kasaan was destroyed by fire. After the fire, Logghe and his family moved to Oregon and stayed there during the first three months of 1981. Logghe contends that the judgment was based on the court's belief that his lack of weekend visitation was attributable to his voluntary departure from Oregon for Alaska. Logghe therefore concludes that, upon his return to Oregon, he should receive credit for those weekends when he was in Oregon but could not visit his child because Jasmer, and not he, was out of the state.

We do not agree with this contention. Logghe's testimony indicates that he did not return to Oregon to exercise his visitation rights; indeed, by that time he knew that Jasmer and Adam were living in Kodiak, Alaska. Thus, a move to Oregon for the purpose of exercising visitation rights would have been futile. Instead, Logghe's testimony indicates that he returned to Oregon to seek work, but found the construction market depressed. We do not believe that he should receive credit for weekends when he was in Oregon for the purpose of seeking employment rather than for the purpose of visiting Adam. Visitation rights would obviously have been more efficaciously exercised had Logghe remained in Alaska.

For the foregoing reasons, we find no error in the judgment.

AFFIRMED.

MOORE, J., not participating.

COMPTON, Justice, dissenting.

I disagree with the trial court's construction of paragraph (8) of the Decree of Dissolution. As this court does not, I dissent.

Paragraph 8 is as follows:

(8) Respondent shall pay to Petitioner $25.00 for each weekend without visitation, said payment to be for the benefit of a third person for child care expenses, unless that lack of visitation is by request of Petitioner; ...

Jasmer testified that Logghe had not paid for a number of weekends he had not visited Adam, and that his failure to visit was not at her request. On this proof alone Jasmer was awarded $5,632.90 in arrearages. No testimony was offered that Jasmer had incurred *any* expenses for weekend child care services, or that she owed anything to any third person for whose benefit she was recovering this amount.

On its face, paragraph (8) would seem to require proof: (a) that Logghe failed to visit Adam; (b) of the number of weekends Logghe failed to visit Adam; (c) that Logghe's failure was not at Jasmer's request; and (d) of the third person for whose benefit Jasmer was collecting the money, or that Jasmer had incurred weekend child care expenses for which she was seeking reimbursement, at the stipulated rate. The trial court did not require proof of the apparent fourth element of Jasmer's claim, and in my view this failure constitutes error. This court brushes aside Logghe's argument by concluding that these payments were "part of the child support obligation owed to Jasmer by Logghe." 686 P.2d at 697. The parties' election to treat child support separately in the consent judgment becomes conveniently irrelevant.

If resolution of this issue is not clear from the language of paragraph (8) itself, "ordinary principles of contract interpretation" (686 P.2d at 697) require that the parties' understanding of the agreement be considered. Logghe testified that he understood that the $25 was not intended as child support, but was to pay for babysitting when neither he nor Jasmer was available to care for Adam on weekends. 686 P.2d at 698, n. 5. I fail to perceive why this testimony has been brushed aside. The trial court did not find Logghe to be unworthy of belief. Jasmer, though she testified in rebuttal, did not dispute Logghe's understanding of the parties' intention regarding paragraph (8). She did not mention the issue at all. Thus Logghe's testimony stands unrebutted, unimpeached and ignored. If it is considered, it is clear that the court's interpretation of paragraph (8) is unsupported by the evidence. Indeed, the evidence plainly contradicts the interpretation.