**Ray GORDON and Charles Gordon, Appellants,**

v.

**FOSTER, GARNER & WILLIAMS, an Alaskan partnership consisting of Christine A. Foster, Jeanne A. Garner, John D. Williams, and John N. Garner, Appellees.**

No. S–2710.

Supreme Court of Alaska.

Feb. 2, 1990.

---

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Justice.

INTRODUCTION.

Appellants Ray and Charles Gordon (hereinafter Gordon) entered into a lease agreement with appellee partnership, Foster, Garner & Williams (hereinafter FG & W).[1] Gordon, the tenant, vacated the leased premises on grounds that a condition was not satisfied, and that FG & W had violated the implied covenant of good faith and fair dealing. FG & W moved for summary judgment against Gordon on grounds of breach of contract. The partnership was granted summary judgment and awarded $44,294.32. This appeal followed.

FACTS.

In 1986 Raymond Gordon began looking for a location for a fast food restaurant he intended to operate in Juneau. He contacted FG & W upon learning that they were seeking a tenant. FG & W desired that Gordon enter into a lease continuing with the terms agreed to by the Kikuya Restaurant, the former lessee of the premises. In addition to agreeing to make certain "minor changes" in the Kikuya lease, the following provision was added:

### CONTINGENCIES

This lease is contingent upon the following:

1. Tenant's acquisition of the leasehold improvements in the Leased Premises from the prior tenant or its lienholder;

2. *Successful renegotiation of the insurance provisions of the lease;*

3. Execution of the UCC filings required under the Security Deposit portion of the lease.

(Emphasis added.)

The parties executed the lease on October 1, 1986. Gordon contends that since he

Loren Domke and William E. Olmstead, Domke & Olmstead, PC, Juneau, for appellants.

Brad J. Brinkman, Batchelor, Murphy & Brinkman, Juneau, for appellees.

---

1. Since the matter comes to us in the context of an appeal from an award of summary judgment we view the facts and the reasonable inferences therefrom in the light most favorable to the appellant (Gordon). *See Kavorkian v. Tommy's Elbow Room, Inc.,* 694 P.2d 160 (Alaska 1985).

was unsuccessful in his efforts to renegotiate the insurance provisions of the lease, the lease never became enforceable.[2]

Gordon admits that Contingency Number 1 (acquisition of Kikuya restaurant equipment) was satisfied. Although Gordon does not concede that Contingency Number 3 (UCC filings) was satisfied, no argument that the condition was not satisfied is made by Gordon. Thus contingency Number 2 is the focus of this appeal.

When the parties' executed the lease Gordon paid both the first month's rent and the security deposit as required under the lease. Gordon then commenced to alter the leased premises. He also contacted insurance brokers in order to obtain the insurance called for in the lease. After consultation with these insurance representatives Gordon concluded that such insurance in some instances was unavailable and in others the costs made procurement of such insurance commercially unreasonable. On November 1, 1986 Gordon wrote FG & W, stating, "I have been unable to re-negotiate the insurance provisions of the lease on any acceptable and reasonable basis." Then on November 14, 1986, Gordon sent FG & W a letter "indicating that he was abandoning the lease as the insurance provisions were in some instances not available and in other instances commercially unreasonable." FG & W subsequently offered to waive Sections 2 and 3 of the insurance provisions contained in the lease, but Gordon did not reconsider.

Thereafter, FG & W filed a complaint in superior court alleging that Gordon had breached the lease by vacating the premises on November 14, 1986. Gordon counterclaimed that FG & W's bad faith renegotiating stance prevented him from opening his restaurant.[3] FG & W moved for summary judgment on its breach of contract claim. The superior court held that the insurance renegotiation contingency provision in the lease was not a condition precedent, to the enforceability of the lease. The superior court further held, in the alternative, that if it were a condition precedent, it had been waived by FG & W. Additionally, the superior court concluded that FG & W had not breached its duty to act in good faith. Judgment was thereafter entered against Gordon in the amount of $44,294.37 in damages, together with prejudgment interest, costs, and attorney's fees.[4]

This appeal followed.

DISCUSSION.

■ We first address the superior court's alternative holding that Gordon's

2. The insurance provisions of the lease read as follows:

ARTICLE XIV
INSURANCE

Section 1. Landlord shall procure such fire and extended coverage, sprinkler leakage, rent loss and other insurance Landlord may deem advisable with respect to the development. Tenant shall reimburse Landlord for any increases in insurance premiums (if any) caused solely by the presence of Tenant's restaurant in the development as compared to insurance premiums that would be charged Landlord if the Leased Premises were utilized as office space....

Section 2. Tenant agrees to secure and keep in force ... at Tenant's own cost and expense:

(a) Comprehensive General Liability Insurance....

(b) Fire Insurance, with extended coverage, vandalism and malicious mischief endorsements....

(c) Broad Form Boiler and Machinery Insurance....

Section 3. All policies of insurance procured by Tenant shall:

(a) be issued by insurance companies reasonably acceptable to Landlord....

....

Section 4. All policies of insurance procured by either Landlord or Tenant pursuant to this Article shall contain an express waiver of any right of subrogation by the insurance company against Landlord or Tenant.

Section 5. Tenant shall not carry any stock of goods or do anything in or about the Leased Premises which will increase insurance rates on the Leased Premises or the building in which the same are located without Landlord's prior written consent.

3. Gordon alleged in his counterclaim that he sustained over $25,000 in damages resulting from expenditures made in preparing the premises for the opening of the restaurant business.

4. No explicit disposition was entered of record in regard to Gordon's counterclaim. We assume, in view of the absence of a Civil Rule 54(b) determination that the superior court implicitly found in favor of FG & W on Gordon's counterclaim.

obligation to obtain insurance for the leased premises was waived by FG & W. In our view the superior court erred in so ruling. Upon receipt of Gordon's November 14 notice of default, FG & W, pursuant to section 1 of Article XIV of the contract, retained the right to obligate Gordon to pay for whatever insurance FG & W considered necessary to obtain, to the extent that the cost of the insurance reflected an increase attributable "solely [to] the presence of the Tenant's restaurant as compared to insurance premiums that would be charged the Landlord if the Lease Premises were utilized as office space." Given this remaining insurance provision we conclude that FG & W did not waive the insurance requirements under the lease.[5]

■ We next address the superior court's holding that the insurance renegotiation contingency provision in the lease was not a condition precedent to the enforceability of the lease. As noted above, the lease in part provided that it was "contingent upon the following ... successful renegotiation of the insurance provisions of the lease."

"[T]he well settled rule of contract interpretation [is] that conditions are disfavored and will not be found in the absence of unambiguous language indicating the intention to create a conditional obligation." *Logghe v. Jasmer*, 686 P.2d 694, 698 (Alaska 1984) (citations omitted). In our view the insurance renegotiation "contingency"

in the parties' lease satisfies this test, and therefore should be enforced as a condition.

FG & W further argues that Gordon cannot avoid his obligation under the lease since he did not first make a "good faith" effort to satisfy the bargained for condition. A duty of good faith and fair dealing is implied in every contract, including insurance contracts. *Mitford v. de Lasala*, 666 P.2d 1000, 1006 (Alaska 1983). It follows that, where a party has promised to attempt to satisfy a condition, the attempt must be made in good faith.[6]

■ Viewing the evidence and the reasonable inferences therefrom in the light most favorable to Gordon (the non-movant), we conclude that there are genuine issues of material fact relating to the question whether Gordon attempted in good faith to renegotiate the insurance provision of the lease.

If the insurance renegotiation provision is construed to require Gordon to "negotiate" with third party insurance agents or brokers, then the showing made by Gordon in opposition to the summary judgment demonstrates that he did in fact undertake good faith efforts to obtain insurance prior to vacating the leased premises.[7] On the other hand, if the insurance renegotiation provision is construed to require Gordon successfully to renegotiate the insurance provisions of the lease with FG & W, the record similarly discloses the existence of genuine issues of material fact as to Gor-

---

5. Gordon accurately viewed the alleged waiver as follows:

   In fact, when I received that letter, my attorney pointed out that they had carefully waived Sections 2 and 3 of the insurance article, but had kept in the right to require all insurance and have the tenant pay for it. See Section 7. They, in fact, dropped the specific requirement that kept the more inclusive ground requirement that increased their discretion....

6. In this regard Section 245 of the Restatement (Second) of Contracts is instructive. That section provides: "Where a party's breach by nonperformance contributes materially to the nonoccurrence of a condition of one of his duties, the non-occurrence is excused." We adopted Section 245 in *Klondike Industries Corp. v. Gibson*, 741 P.2d 1161, 1167 (Alaska 1987). The

rule is explained in comment a of the same section of the Restatement:

   Where a duty of one party is subject to the occurrence of a condition, the additional duty of good faith and fair dealing ... may require some cooperation on his part, either by refraining from conduct that will prevent or hinder the occurrence of that condition or by taking affirmative steps to cause its occurrence.... The rule in this section only applies, however, where the lack of cooperation constitutes a breach, either of a duty imposed by the terms of the agreement itself, or of a duty imposed by a term supplied by the court. There is not breach if the risk of such lack of cooperation was assumed by the other party or if the lack of cooperation is justifiable.

7. Gordon established that he had consulted with two insurance brokers in Juneau.

don's good faith efforts in this regard. Gordon's November 1st letter apprised FG & W of the fact that Gordon was unable to renegotiate various aspects of the required insurance coverage. Further, in the period from November 1st through November 14th, both Gordon and his attorney informed FG & W of the problems Gordon had encountered in obtaining the required insurance as well as the specific types of insurance coverage Gordon had been told were unavailable.

In light of the foregoing we hold that the superior court's grant of summary judgment is reversed and remand the matter for further proceedings not inconsistent with this opinion.[8]

REVERSED and REMANDED.

---

8. On remand the superior court should determine what meaning the parties intended to give to the "successful renegotiation of insurance" clause. Does the provision obligate Gordon to negotiate in good faith solely with third party insurers and their representatives? Or does the provision obligate Gordon to negotiate in good faith only with FG & W, or with FG & W in combination with insurers and their representa-tives, regarding the insurance required of Gordon under the lease?

If necessary, on remand the superior court should consider the effect of Gordon's payment of the first month's rent and the security deposit required under the lease, as well as his occupation of the premises from October 1 until November 14.