M. SUZANNE SYLVESTER, D.V.M., Plaintiff–Appellant, v. ANIMAL EMERGENCY CLINIC OF OAHU; DARRELL C. ALLISON, D.V.M.; K. F. CHOY, D.V.M.; NAM Y. CHUNG, D.V.M.; JAMES E. DEEMER, D.V.M.; PETER D. HERMAN, D.V.M.; JAMES H. HIGA, D.V.M.; ROY E. HUBBARD, D.V.M.; FRANCIS T. KAMIYA, D.V.M.; CLIFFORD KUMAMOTO, D.V.M.; TIMOTHY LAU, D.V.M.; ROBERT A. MORRIS, D.V.M.; LESTER G. NAITO, D.V.M.; EDWARD K. NAKAGAWA, D.V.M.; DONALD H. WONG, D.V.M.; KERRY K. YOON, D.V.M.; and RICHARD LAWTON, D.V.M., Defendants–Appellees

NO. 14495

(CIV. NO. 87–3381–10)

DECEMBER 27, 1990

BURNS, C.J., HEEN, AND TANAKA, JJ.

OPINION OF THE COURT BY TANAKA, J.

Plaintiff M. Suzanne Sylvester (Sylvester), a Doctor of Veterinary Medicine, appeals from the circuit court's orders (1) enforcing an oral settlement agreement, and (2) denying her the interest awarded to her in a $15,512 arbitration award. Sylvester argues that (1) the settlement agreement was not enforceable due to lack of consideration, and (2) the circuit court erred in ruling that she had waived her right to the interest. We conclude that (1) the settlement agreement lacked consideration and (2) the court erred in denying Sylvester the interest accrued prior to tender of payment. Accordingly, we vacate the orders and remand the case for further proceedings.

## FACTS

On March 8, 1986, Sylvester entered into an employment contract (Contract) with defendant Animal Emergency Clinic of Oahu (Clinic), a general partnership. The Contract was for a term of two years, from April 1, 1986, through March 31, 1988. Paragraph 4 of the Contract gave Sylvester an option (Option) to purchase 50.1% of the equity of the Clinic on or before March 31, 1988, for $25,000. Sylvester paid $5,000 as consideration for the Option. The Contract also included an arbitration clause.

On July 15, 1987, a managing partner of the Clinic notified Sylvester by letter that the Clinic would discontinue operation on July 31, 1987, and discharge Sylvester as an employee on that date. On July 28, 1987, Sylvester wrote to the Clinic, demanding that it fulfill its obligations under the Contract and the Option.

On October 23, 1987, Sylvester filed a six–count complaint against the Clinic and its sixteen partners, all veterinarians (collectively Defendants).[1] The complaint alleged (1) breach of the Contract, (2) breach of the Option, (3) violation of Hawai'i Revised Statutes (HRS) § 378–2(1) (Supp. 1989),[2] (4) loss of business relationship, (5) mental and emotional distress, and (6) bad faith and willful breach of the Contract and the Option, entitling her to punitive damages.

---

[1] On July 15, 1988, defendant Richard R. Lawton was dismissed from the case with prejudice by stipulation of the parties.

[2] Hawai'i Revised Statutes § 378–2(1) (Supp. 1989) provides as follows:

It shall be an unlawful discriminatory practice:

(1) For any employer to refuse to hire or employ or to bar or discharge from employment, or otherwise to discriminate against any individual in compensation or in the terms, conditions, or privileges of employment because of race, sex, age, religion, color, ancestry, handicapped status, marital status, or arrest and court record.

On January 12, 1988, Sylvester filed a first amended complaint alleging three additional counts of misrepresentation, fraudulent misrepresentation entitling her to punitive damages, and defamation, respectively.

On February 4, 1988, pursuant to Defendants' motion, the circuit court entered an order compelling arbitration on all counts in the first amended complaint except Count III (violation of HRS § 378–2(1)) and Count IX (defamation) and stayed the proceeding pending arbitration.

On August 5, 1988, following an arbitration hearing, the arbitrator issued an award in favor of Sylvester for $15,512 plus ten percent interest from August 1, 1987, until paid.

On August 18, 1988, Sylvester filed a motion to modify or correct the arbitration award (August 18, 1988 Motion). A hearing on the motion was scheduled for September 2, 1988.

On September 1, 1988, Sylvester's then attorney, Phillip A. Li (Mr. Li), telephoned Defendants' then attorney, Richard A. Rand (Mr. Rand), to discuss a settlement. At his deposition, Mr. Li testified:

> I called [Mr. Rand] and told him my client wanted to get rid of the mess, that she wanted to be paid the amount that had been awarded in the arbitration, and that she would intend to not pursue her other claims that remained outside of the arbitration process. And that both sides would pay their own attorneys' fees and costs and ... if that were the case, we would not show up for the hearing the next morning.

Record, Vol. 2 at 123. Mr. Rand responded that he would confer with his clients and call Mr. Li the next morning. Mr. Li indicated that he would contact the circuit court in the morning to withdraw the August 18, 1988 Motion.[3]

---

[3] The September 2, 1988 minutes of the circuit court states that plaintiff's motion to modify or correct arbitration award was "OFF/WITHDRAWN 9/2/88

On the morning of September 2, 1988, Mr. Rand informed Mr. Li that Defendants accepted the offer of settlement. Later that morning, Mr. Rand notified Mr. Li that he had a check in the amount of the arbitration award with interest accrued to that date for delivery to Mr. Li. According to Mr. Rand, Mr. Li told him "to hold on to it [the check] and that he [Mr. Li] would proceed to prepare the stipulation for dismissal with prejudice." Record, Vol. 2 at 22. Subsequently, Mr. Li started to draft the settlement document when he learned that Sylvester did not want to settle the case.[4]

On October 21, 1988, Sylvester filed a pretrial statement which did not mention any settlement of the case. On January 3, 1989, Sylvester's current attorney, Edward D. Boyle (Mr. Boyle) demanded payment of the $15,512 plus ten percent interest due under the arbitration award.

On January 11, 1989, Defendants filed a motion to enforce the settlement agreement allegedly entered into on September 2, 1988 (Settlement Agreement). On February 7, 1989, after a hearing on the motion, the circuit court, in a minute order, ruled that the Settlement Agreement was effective as of September 2, 1988. On February 17, 1989, Sylvester filed a motion for reconsideration. On March 14, 1989, the court entered its written order granting the motion to enforce the Settlement Agreement. Subsequently, the court denied Sylvester's motion for reconsideration.

In the interim, on February 17, 1989, Sylvester filed a motion to confirm the arbitration award. On April 17, 1989, the court

---

AS REQUESTED BY P. LEE [sic]." A written withdrawal of the motion was never filed.

[4] The record contains conflicting dates as to when Phillip A. Li learned that plaintiff M. Suzanne Sylvester (Sylvester) did not want to settle the case. When deposed on December 19, 1988, Mr. Li testified that he learned that Sylvester did not want to settle the case "[c]lose to October 21st of 1988." Record, Vol. 2 at 127. However, in his affidavit dated February 3, 1989, Mr. Li states that "[o]n or about September 20, 1988, he learned that a miscommunication had occurred and that Dr. Sylvester intended to pursue her non–arbitrable claims." Id. at 150.

confirmed the arbitration award of $15,512 to Sylvester, but held that the ten percent interest would accrue from January 3, 1989,[5] instead of August 1, 1987.

Since the enforcement of the Settlement Agreement resulted in the dismissal of Counts III and IX and the arbitration adjudicated the remaining counts, the circuit court entered a judgment dismissing the case on April 11, 1990. Thereupon, Sylvester appealed.[6]

## DISCUSSION
### I. Settlement Agreement

A settlement agreement, "like other contracts, requires an offer and acceptance, consideration, and parties who have the capacity and authority to agree as they do." *Dowsett v. Cashman*, 2 Haw. App. 77, 83, 625 P.2d 1064, 1068 (1981). Sylvester contends that due to lack of consideration, the circuit court erred in enforcing the Settlement Agreement wherein she agreed to dismiss Counts III and IX of the first amended complaint, the non-arbitrable claims. We agree.

As a general rule, "[c]onsideration is either a benefit to the person making the promise or a detriment to the person to whom a promise is made." *John Deere Co. v. Broomfield*, 803 F.2d 408, 410 (8th Cir. 1986). Thus, generally, a promise is without consideration "where no benefit is conferred on the promisor nor detriment suffered by the promisee[.]" 17 C.J.S. *Contracts* § 74, at 761 (1963). We apply this rule in determining whether there was

---

[5] January 3, 1989, is the date when Sylvester's attorney demanded the amount due under the arbitration award.

[6] Sylvester initially filed a notice of appeal on April 19, 1989. On January 18, 1990, this court dismissed the appeal for lack of appellate jurisdiction. *Sylvester v. Animal Emergency Clinic of Oahu*, No. 13798 (Haw. App. Jan. 18, 1990) (mem.).

consideration to support Sylvester's promise to dismiss her non-arbitrable claims.

## A.

Defendants' counter–promise to pay to Sylvester the amount specified in the arbitration award cannot be a consideration. The general rule is that a promise to perform "an existing legal obligation is not a valid consideration, except where the very existence of the duty is the subject of honest and reasonable dispute." *Id.* § 110, at 827–28 (footnote omitted). Here, Defendants had a legal obligation to pay to Sylvester $15,512, with interest, as determined by the arbitrator. Defendants' duty to pay this arbitration award was not disputable.

## B.

Defendants argue, however, that their promise to stipulate to the dismissal of the non–arbitrable claims, as required by Hawai'i Rules of Civil Procedure (HRCP) Rule 41(a)(1)(B),[7] constituted sufficient consideration. We cannot agree that this promise conferred any legal benefit to Sylvester. As Defendants concede, Sylvester could have obtained a dismissal of her non–arbitrable claims by order of the court pursuant to HRCP Rule 41(a)(2).[8] Moreover,

---

[7] Hawai'i Rules of Civil Procedure (HRCP) Rule 41(a)(1)(B) provides in part as follows:

[A]n action may be dismissed by the plaintiff without order of court . . . (B) by filing a stipulation of dismissal signed by all parties who have appeared in the action.

[8] HRCP Rule 41(a)(2) provides in part as follows:

Except as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper.

we fail to see how Defendants' promise to stipulate to the dismissal of Sylvester's claims would result in any detriment to them. On the contrary, the dismissal of Sylvester's claims would be a benefit to Defendants, which is why Defendants sought to enforce the oral Settlement Agreement.

## C.

Finally, Defendants argue that (1) Sylvester's offer of settlement included an agreement that each side bear its own costs and attorneys' fees; (2) when the offer was made, Sylvester's "frivolous" motion to modify or correct the arbitration award and Defendants' memorandum in opposition, wherein they requested attorneys' fees and costs pursuant to HRCP Rule 11, were pending; (3) in accepting Sylvester's offer of settlement, Defendants incurred a detriment, forbearance from pressing their claim of a Rule 11 sanction for attorneys' fees and costs; and (4) such forbearance constituted consideration for Sylvester's promise to dismiss the non–arbitrable claims. We disagree.

When Sylvester filed her August 18, 1988 Motion (to modify or correct the arbitration award), HRCP Rule 11 (original HRCP Rule 11)[9] required at least one attorney of record to sign a pleading and provided in part as follows:

> The signature of an attorney constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information, and belief there is good ground to support it; and it is not interposed for delay. If a pleading is not signed or is signed with intent to defeat the purpose of this rule, it may be stricken as sham and false and the action may proceed as though the pleading had not

---

[9] HRCP Rule 11 was amended effective September 1, 1990. It is now almost identical with Rule 11 of the Federal Rules of Civil Procedure.

been served. For a wilful violation of this rule an attorney may be subjected to appropriate disciplinary action. Similar action may be taken if scandalous or indecent matter is inserted.

Original HRCP Rule 11 is virtually identical to its federal counter-part, Rule 11 of the Federal Rules of Civil Procedure, prior to its amendment in 1983 (old Rule 11). Since pertinent federal decisions interpreting old Rule 11 are deemed "to be highly persuasive," we will consider them in construing original HRCP Rule 11. *Ellis v. Crockett*, 51 Haw. 45, 61, 451 P.2d 814, 824 (1969).

Old Rule 11 explicitly provided only two sanctions: first, striking the pleading "as sham and false" if the pleading is not signed or is signed with the intent to defeat the rule's purpose; and second, subjecting an attorney "to appropriate disciplinary action" for willful violation of the rule. *See* 5A C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 1336 (1990). The Court of Appeals of the Seventh Circuit stated that for a willful violation of old Rule 11, "[t]he imposition of costs and fees against an attorney . . . seems an appropriate sanction for conduct not rising to a level requiring suspension or disbarment of the attorney in question." *Badillo v. Central Steel & Wire Co.*, 717 F.2d 1160, 1166 (7th Cir. 1983). The standard for a willful violation of old Rule 11 is "bad faith." *Nemeroff v. Abelson*, 620 F.2d 339, 350 (2d Cir. 1980). Old Rule 11 does not, however, say anything "about *disciplining a party* by imposing attorney's fees upon him for any act of his lawyer, even if his lawyer willfully violated Rule 11." *United States v. Standard Oil Co. of Cal.*, 603 F.2d 100, 103 n.2 (9th Cir. 1979) (emphasis added). Where the federal courts have awarded attorneys' fees as a sanction imposed on a party, there has been a finding of bad faith and reliance on the courts' inherent equitable powers, rather than old Rule 11, as the basis of their authority. *Badillo*, 717 F.2d at 1167 n.2; *Ellingson v.*

*Burlington N., Inc.*, 653 F.2d 1327, 1332 (9th Cir. 1981). We apply the foregoing precepts to the facts in this case.

Defendants' memorandum in opposition to Sylvester's August 18, 1988 Motion (1) discussed the pertinent appellate cases which construe the statute providing for modifying or correcting an arbitration award; (2) specified Sylvester's failure to cite and discuss those cases; (3) argued therefore that Sylvester's motion was "frivolous"; and (4) requested the court to sanction Sylvester under original HRCP Rule 11 by the imposition of an award for attorneys' fees and costs. Defendants failed to allege that Sylvester's attorney's action was a "willful violation" of original HRCP Rule 11 or that Sylvester's or her attorney's action constituted "bad faith." Based on such circumstances, Defendants' claim for attorneys' fees and costs as a sanction under original HRCP Rule 11 was ill-founded and utterly void *ab initio*.

Forbearance to press a claim does not constitute consideration "if the forbearance is with knowledge that the claim is ill-founded and void." 1 A. CORBIN, CORBIN ON CONTRACTS § 140, at 596 (1963). The record discloses that Defendants' then attorneys were astute and knowledgeable in the law. We impute to them knowledge of the proper construction of original HRCP Rule 11 and what would constitute a valid claim for sanctions thereunder.

Accordingly, we conclude that Defendants' forbearance to press their claim for attorneys' fees and costs under original HRCP Rule 11 was ill-founded and void and did not constitute consideration for Sylvester's promises to dismiss her non-arbitrable claims.

We therefore hold that the circuit court erred in enforcing the Settlement Agreement.

## II. Interest on the Arbitration Award

Sylvester contends that, in confirming the arbitration award, the circuit court "erred in amending the Arbitration Award so that

ten percent interest on the principal amount of $15,512.00 ran not from August 1, 1987, as provided by the Arbitrator, but from January 3, 1989." We conclude that the circuit court erred in ruling that Sylvester was not entitled to any interest for any period prior to January 3, 1989.

Sylvester argues that since no party to the arbitration moved to modify or correct the award, the circuit court should have granted her motion to confirm the award without any amendment. The court, however, did not modify any term contained in the arbitration award. The court merely sought to enforce the award pursuant to the law involving tender of payment.

The circuit court construed Sylvester's "refusal" of the September 2, 1988 tender of payment by Defendants as waiver of all interest which had already accrued from August 1, 1987. According to the court, interest did not begin to accrue again until Mr. Boyle made a demand for payment on January 3, 1989. The court erred in this regard.

The court ignored the general rule that where a party tenders payment of an obligation, accrual of interest stops if the tender (1) is for the full amount of the obligation, (2) is without deduction for any claim asserted by the debtor but denied or disputed by the creditor, and (3) is not coupled with any condition which precludes the creditor from contesting the debtor's claim. *Certified Corp. v. Market Center, Ltd.*, 51 Haw. 121, 123, 452 P.2d 442, 443 (1969); 74 AM. JUR. 2D *Tender* § 39 (1974).

On September 2, 1988, Defendants tendered the full amount due under the arbitration award, including the interest which had accrued from August 1, 1987, until that date. Defendants made no deductions from the amount due and the tender was not coupled with any condition. Thus, Defendants' tender suspended further accrual of interest. Sylvester, however, was entitled to the interest which had already accrued from August 1, 1987, to September 2, 1988.

The next issue is whether Mr. Boyle's January 3, 1989 demand for payment reactivated the accrual of interest. In general, a tender must be kept good, and must at all times be ready for acceptance to stop further accrual of interest. "Under this rule, a subsequent demand and refusal destroys the effect of tender, for such refusal shows that the tender has not been kept good." 74 AM. JUR. 2D *Tender* § 28, at 564.

Defendants' failure to tender payment following Mr. Boyle's January 3, 1989 demand for payment destroyed the effect of the good tender made by Defendants on September 2, 1988. Consequently, interest on the arbitration award began accruing again effective January 3, 1989.

Accordingly, we conclude that Sylvester is entitled to interest which accrued from August 1, 1987, to September 2, 1988, and further to interest from January 3, 1989, until the principal amount of $15,512 is fully paid.

## CONCLUSION

1. We vacate the "Order Granting Defendants' Motion to Enforce Settlement Agreement," filed on March 14, 1989.

2. Regarding the "Order Denying Plaintiff's Motion for Reconsideration and Granting in Part and Denying in Part Plaintiff's Motion to Confirm Arbitration Award," filed on April 17, 1989, we (a) reverse the denial of "Plaintiff's Motion for Reconsideration of Order Enforcing Settlement Agreement"; (b) affirm the confirmation of the arbitration award that "Defendants shall pay Plaintiff the net sum of $15,512.00"; and (c) vacate the holding that "ten percent (10%) interest shall accrue from January 3, 1989 until paid, not from August 1, 1987 until paid."

3. We vacate the Judgment filed on April 11, 1990.

4. We remand the case for further proceedings consistent with this opinion.

*Edward deLappe Boyle* and *Ernest H. Nomura* (Cades Schutte Fleming & Wright, of counsel) on the briefs for plaintiff–appellant.

*Harold Chu* on the brief for defendants–appellees.