931 P.2d 604

**Pil Dong HAN and Young Sun Han, Plaintiffs–Appellees,**

v.

**Min Ho YANG dba Brothers Realty, Defendant–Appellant,**

and

**Han Kun Cho, John Doe 1–10, Doe Corporation 1–10 and Doe Partnership 1–10, Defendants.**

No. 17328.

Intermediate Court of Appeals of Hawai'i.

Jan. 28, 1997.

Walter K. Horie and Anthony H. Yusi (Horie & Yusi, of counsel), on the brief, Honolulu, for Defendant-Appellant.

Ronald G.S. Au and Connie G.W. Meredith, on the brief, Honolulu, for Plaintiffs-Appellees.

Before BURNS, C.J., and ACOBA and KIRIMITSU, JJ.

KIRIMITSU, Judge.

In this breach of contract, misrepresentation, and breach of fiduciary duty case, Defendant–Appellant Min Ho Yang (Yang)[1] appeals from the First Circuit Court's June 17, 1993 judgment, pursuant to a jury verdict, awarding compensatory, punitive, and treble damages to Plaintiffs–Appellees Pil Dong Han and Young Sun Han (collectively, Han).[2] We affirm the June 17, 1993 judgment, except that portion awarding treble damages against Yang, which we vacate and remand for action consistent with this opinion.

## I. BACKGROUND

### A. Summary Of The Facts

Defendant Han Kun Cho (Cho) and his wife owned a house on Nāmau'u Drive in the Pu'unui District of Liliha in Honolulu. Cho wanted to buy a home in the Kahala area and

---

1. Co-defendant Han Kun Cho (Cho) was found liable by the jury but elected not to appeal. He is not a party to this appeal.

2. The jury awarded $61,800 in special damages and $5,000 in general damages for misrepresentation and breach of fiduciary duty against Min Ho Yang (Yang) and Cho, collectively, and $50,- 000 in punitive damages against Yang and $75,- 000 in punitive damages against Cho, individually. The trial court's June 17, 1993 judgment included an additional $10,000 against Yang for the plaintiff as stipulated by the parties on May 25, 1993, and $70,140 in treble damages (but no punitive damages) against Yang.

hired his long-time friend, Yang (doing business as Brothers Realty), to sell the Nāmau'u Drive property. Cho was a former employer of Yang.

In October 1989, Yang found a replacement home for Cho in Kahala. At that point, Yang introduced Cho to Han. (Han was also a close friend of Yang and had previously invested in real estate with Yang.) Although Han was also a long-time friend of Yang, Yang apparently failed to secure written waivers from either Han or Cho that would resolve any conflict of interest resulting from Yang's dual representation role. Paragraph four of Han's complaint says that he was told about the dual representation, but at trial Han testified that he was unaware of the dual representation, and the trial court prevented Yang from showing paragraph four to Han during Han's testimony.

After inspecting the Nāmau'u Drive property, Han agreed to purchase the property for $375,000, conditioned upon Han's ability to obtain financing.[3] On October 25, 1989, Yang gave Cho a Deposit Receipt, Offer and Acceptance (DROA) on behalf of Han. On the same day, Yang prepared a DROA for Cho to acquire the property in Kahala. Closing on the Nāmau'u Drive property was scheduled for January 2, 1990. On February 7, 1990, Han secured a loan commitment.

Later that summer there was a strange turn of events. Yang testified that Cho's wife, who was in Japan when the DROA was signed, voiced objections for the first time to the sale of the Nāmau'u Drive property. Cho's wife had not signed the DROA and Cho and his wife held the Nāmau'u Drive property as tenants by the entirety. She testified that she refused to sell the Nāmau'u Drive property because it was "cool," convenient, and "comfortable."

Shortly thereafter, Han hired an attorney and demanded that the Nāmau'u Drive deal be closed immediately. Yang then discussed the dispute with Cho and Han and convinced both parties to settle the case for $22,000. On August 8, 1990, Cho signed a handwritten promissory note agreeing to pay Han $22,000 for cancellation of the DROA. Cho and Han subsequently submitted an "Escrow Cancellation" form to the Long & Melone Escrow, Limited escrow company in October 1990. Cho subsequently rejected and repudiated the note. In February 1991, Yang gave Han a check for $10,000 (the amount of Yang's commission previously paid by Han), which Han did not cash on advice of counsel.

## B. Procedural History

On April 12, 1991, Han sued both Cho and Yang for breach of contract, misrepresentation, and unfair or deceptive trade practices, and sued Yang for breach of fiduciary duty. On May 14, 1993, Yang filed a motion *in limine* to enforce the August 8, 1990 settlement agreement. The trial court orally denied the motion after a May 18, 1993 hearing and entered its written order on June 1, 1993.

On May 25, 1993, the jury returned the following unanimous special verdict: (1) there was no valid and enforceable DROA contract between Cho and Han; (2) both Cho and Yang made at least one misrepresentation of material fact to Han; and (3) Yang breached his fiduciary duty and engaged in unfair or deceptive practices. The jury awarded Han special, general, and punitive damages.[4] The trial court then, pursuant to an oral motion made immediately after the jury verdict, issued an order on June 17, 1993 granting Han treble damages against Yang.

Yang moved for Judgment Notwithstanding the Verdict (JNOV) on June 7, 1993. On July 29, 1993, the trial court entered its order denying the motion.

On June 25, 1993, Han filed a motion seeking attorney's fees and costs from Cho and Yang. On July 14, 1993, the trial court partially granted the motion, awarding attor-

---

3. The initial asking price for the Nāmau'u Drive property was $400,000. But in return for Yang's waiver of commissions from Cho and Yang's promise to pay $25,000 of a $50,000 debt Yang previously owed to Cho, Cho agreed to reduce the price to $375,000. Shortly thereafter, Han was told by Yang that Han had to pay Yang $10,000 in commissions. Han agreed and subsequently made the payment.

4. *See supra* note 2.

ney's fees and costs against Yang but denying attorney's fees against Cho.

Yang's timely notice of appeal was filed on July 30, 1993.

## II. DISCUSSION

■ Yang now appeals the denial of his motion for mistrial, the order denying his motion for JNOV,[5] the order granting in part and denying in part Han's motion for attorney's fees and costs,[6] and the trial court's June 17, 1993 judgment. He argues five points of error on appeal: (1) the trial court should have enforced the settlement agreement between the parties; (2) the trial court erred in excluding evidence of Cho's settlement offer; (3) the trial court erred by admitting irrelevant or prejudicial evidence of other real estate and loan transactions between Yang and Cho; (4) the trial court should have permitted Han to introduce information from Han's complaint as an admission by a party opponent; and (5) the trial court mistakenly awarded quadruple instead of treble damages.

We address each argument in order.

### A. Enforcement Of The Settlement Agreement

Yang first argues that the trial court should have enforced the settlement agreement between Cho and Han. He argues that "there is no question that the parties had a meeting of minds [sic] with regard to the settlement of the case." He bases this contention on Cho's August 8, 1990 agreement to pay Han $22,000 in exchange for the August 10, 1990 submission of a joint cancellation instruction to the escrow company. We disagree.

### 1. Standard of Review

■ "The trial court's determination that [a] ... settlement agreement was enforceable [or unenforceable] is a conclusion of law reviewable de novo." Sylvester v. Animal Emergency Clinic of Oahu, 72 Haw. 560, 565, 825 P.2d 1053, 1056 (1992) (citing Strouss v. Simmons, 66 Haw. 32, 657 P.2d 1004 (1982); Molokoa Village Dev. Co. v. Kauai Elec. Co., 60 Haw. 582, 593 P.2d 375 (1979); Wiginton v. Pacific Credit Corp., 2 Haw.App. 435, 634 P.2d 111 (1981)).

### 2. Settlement Agreements

■ A settlement agreement " 'is an agreement to terminate, by means of mutual concessions, a claim [that] is disputed in good faith or unliquidated.[7] It is an amicable method of settling or resolving bona fide differences or uncertainties and is designed to prevent or put an end to litigation.' " Id. at 565–66, 825 P.2d at 1056 (quoting 15A Am.Jur.2d Compromise and Settlement § 1 (1976)) (footnote omitted).

■ The public policy of our appellate courts "favors the resolution of controversies through compromise or settlement rather than by litigation." Id. at 566, 825 P.2d at 1056 (citing Dowsett v. Cashman, 2 Haw.App. 77, 82–83, 625 P.2d 1064, 1068 (1981)). Settlement agreements facilitate our appellate courts' "policy to foster amicable, efficient, and inexpensive resolutions of disputes." Id., at 566, 825 P.2d at 1057. Judicial administration, the government, and citizens as a whole all benefit from a fluid resolution of legal disputes. See id.

■ If a dispute results in a settlement agreement, the agreement, "like any other contractual agreement, must be supported by consideration." Id. at 567, 825 P.2d at 1057 (citing Dowsett, 2 Haw.App. at 83, 625 P.2d at 1068). A settlement agreement " 'is sup-

---

**5.** We consider the issues raised in Yang's Judgment Notwithstanding the Verdict (JNOV) motion waived because none of the points in Yang's appellate brief refer to the issues previously raised in his motion for JNOV. Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(4).

**6.** Yang's notice of appeal and the first page of his appellate brief indicate that he is appealing from the award of attorney's fees and costs. But nei-

ther his points of error nor his substantive argument mention the issue of attorney's fees and costs. Consequently, we consider the issue waived. HRAP Rule 28(b)(4).

**7.** An unliquidated claim is one that is disputed and "has not been finally determined either as to liability or damages." Black's Law Dictionary 1378 (5th ed. 1979).

ported by good consideration if it is based upon a[n] ... unliquidated claim and if the parties make or promise mutual concessions as a means of terminating their dispute; no additional consideration is required.'" *Id.* (quoting 15A Am.Jur.2d *Compromise and Settlement* § 13 (1976)). Thus, in the present case, we must determine whether the alleged settlement agreement was based on an unliquidated claim, and if so, whether the parties made or promised mutual concessions as a means of terminating the dispute.

### 3. *The Trial Court Correctly Refused to Enforce the Settlement Agreement*

■ We have little trouble determining that the proposed settlement between Cho and Han was based on an unliquidated claim. At the time the promissory note was signed, there was no final determination made concerning either the liability of, or damages suffered by, any party. Thus, there was a genuine dispute between the parties that satisfies the definition of an unliquidated claim. *See supra* note 7.

■ The issue of mutual concessions presents a more complicated question. It is undisputed that Cho made a handwritten promissory note agreeing to pay Han $22,000 in exchange for cancellation of the DROA on the Nāmauʻu Drive property. The note specifically stated:

Aug 8 90

I agree to pay $22,000 to Han Pil Dong for cancellation DROA for 2656 Namauu Dr

/s/ Han Kun Cho

Seller Han Kun Cho

Two months later, Cho and Han completed the "Escrow Cancellation" form cancelling escrow on the Nāmauʻu Drive property and releasing Long & Melone Escrow, Limited from liability.

If Han agreed to cancel the DROA for the $22,000 or accepted the $22,000, there would have been a settlement agreement. But the trial court refused to enforce the agreement. As the following excerpt reveals, the court, in explaining its denial of Yang's motion to enforce the agreement, believed that the evi-

dence was inconclusive as to the existence of a settlement agreement:

> THE COURT: [The] Court is going to deny this motion. Defendant Yang has failed to establish the existence of an enforceable settlement agreement. There is no written settlement or release agreement signed by the parties. There is no document signed by all of the parties which evidences the release of claims or the dismissal of this lawsuit.
>
> The escrow cancellation releases Long & Melone Escrow, Limited only. And the alleged promissory note is inconclusive as to the existence of a settlement agreement or an acceptance by the plaintiff in this case....

We agree. Yang has failed to establish that Han's cancellation of the escrow was in direct exchange for Cho's promise to pay Han the $22,000. Consequently, the record does not conclusively indicate that there were mutual concessions between Cho and Han, either express or implied.

■ Even assuming, however, that there was an enforceable settlement agreement between Han and Cho, there was no enforceable settlement agreement between Han and Yang. If a person is not a party to a proposed or actual settlement and is neither released from liability by the terms of the agreement nor an intended beneficiary of the agreement, that person lacks standing to have the agreement enforced in a court of law. *See Hunt v. First Ins. Co. of Hawaii, Ltd.,* 82 Hawaiʻi 363, 367, 922 P.2d 976, 980 (App.1996) (holding that a third party must be an intended beneficiary to have an enforceable contract right). Hence, Yang lacked standing to have the agreement enforced. Accordingly, we hold that the trial court properly denied Yang's motion to enforce the settlement agreement.

### B. *Admissibility Of Settlement Offers*

Yang next contends that the trial court erred in precluding evidence of Cho's settlement offer.[8] He argues that "the court

8. Cho's settlement offer was his agreement to pay $22,000 to Han for cancellation of the De-

posit Receipt, Offer and Acceptance for 2656

should have allowed evidence of [his] efforts to aid [Han] when the transaction fell through, or declared a mistrial." We disagree.

### 1. *Standard of Review*

This issue falls within the confines of Hawai'i Rules of Evidence (HRE) Rule 408, which involves the admissibility of settlement offers. The rule provides, in part:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, or (3) mediation or attempt to mediate a claim which was disputed, is not admissible to prove liability for or invalidity of the claim or its amount.... This rule ... does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

HRE Rule 408.

> [D]ifferent standards of review must be applied to trial court decisions regarding the admissibility of evidence, depending on the requirements of the particular rule of evidence at issue. When application of a particular evidentiary rule can yield only one correct result, the proper standard for appellate review is the right/wrong standard. However, the traditional abuse of discretion standard should be applied in the case of those rules of evidence that require a "judgment call" on the part of the trial court.

*Kealoha v. County of Hawai'i*, 74 Haw. 308, 319–20, 844 P.2d 670, 676 (1993).

■ In this case, there are two questions involving the standard of review that must be applied to the trial court's refusal to allow the admission of Cho's settlement offer. The first question is whether the settlement offer would be used to prove liability for, or invalidity of, the claim or its amount. Because the trial court would have had no discretion

Nāmau'u Drive contained in the August 8, 1990

to admit the settlement offer if it was offered for liability or invalidity, the correct standard of review for this determination is right/wrong. *Best Place, Inc. v. Penn Am. Ins. Co.*, 82 Hawai'i 120, 136–37, 920 P.2d 334, 350–51 (1996).

■ The second question is whether the evidence was offered for "another purpose" and qualified as an exception to the general prohibition of settlement offers. This determination requires a judgment call on the part of the trial court and is reviewed for abuse of discretion. *Kealoha,* 74 Haw. at 319–20, 844 P.2d at 676. A trial court abuses its discretion when it " 'clearly exceed[s] the bounds of reason or disregard[s] rules or principles of law or practice to the substantial detriment of a party litigant.' " *Richardson v. Sport Shinko (Waikiki Corp.)*, 76 Hawai'i 494, 504, 880 P.2d 169, 179 (1994) (quoting *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 114, 839 P.2d 10, 26 (1992) (citation omitted)).

### 2. *Evidence of a Settlement Offer was Properly Excluded*

The crux of Yang's argument on the introduction of Cho's settlement offer revolves around Han's claim that Yang "was conspiring against him ... [and] that when the problem was presented to [Yang], he did nothing." During the May 18, 1993 hearing on Cho's motion *in limine* to exclude the settlement offer, Yang attempted to convince the trial court that the only way he could rebut allegations of conspiracy and slothfulness was by introduction of Cho's settlement offer:

> [YANG'S COUNSEL]: [I]f you don't allow us to present [Cho's offer], everything that [Han] said, all that chatter about breach of fiduciary duty and misconduct by Mr. Han is actually possibly, remotely credible.
>
> But if you look at the real facts of the case and see that Mr. Yang is in between two of his friends and saying: Listen, why don't you guys get together, why don't you settle this thing; look, Mr. Cho, you got [sic] two pieces of property, how about you give him $22,000 because you're going to

promissory note.

make a profit if you sell one of the properties, so give him the $22,000. That doesn't sound like a breach of fiduciary duty. That doesn't sound like conspiracy. That sounds essential for us to present an effective defense to the jury about what occurred in this case and what is necessary in this case.[9]

The trial court disagreed. In it's initial ruling on Cho's motion, the court explained:

> THE COURT: The Court is going to grant [Cho's] motion based on Rule 408. In this case there is a dispute as to the existence of a settlement or offer of compromise. The evidence of a possible settlement or offer of compromise, in the Court's view, would be misleading and confusing to the jury.

Three days later, after Yang's argument that the offer be admitted for another purpose, with a cautionary instruction, the trial court repeated and expanded its earlier ruling:

> THE COURT: The Court has reviewed Defendant Yang's proposed cautionary instruction regarding compromise and offers to compromise, and also reviewed and considered the arguments of counsel yesterday.
>
> In accordance with the Court's earlier ruling granting Defendant Cho's Motion in

Limine, evidence of the existence of the $22,000 promissory note by Defendant Cho to Plaintiff Han, the discussions regarding a possible compromise or settlement and the other circumstances surrounding the making of the note and the subsequent nonpayment of the note shall be excluded. On balance, the Court believes that introduction of the aforementioned evidence would be confusing, misleading, prejudicial and against public policy.

> Therefore, pursuant to Rules 403 and 408 of the Hawai'i Rules of Evidence, the Court denies Defendant Yang's request to introduce evidence of and relating to the $22,000 promissory note.[10]

 We agree with the trial court's decision. In the dispute between Han and Cho, Cho's offer to pay Han $22,000 in exchange for Han's cancellation of the DROA was clearly a promise to pay a valuable consideration to compromise a claim that was disputed as to either validity or amount. It was, then, not admissible, according to the provisions of HRE Rule 408, to prove either liability for, or invalidity of, Han's claim against Yang.

 Additionally, the trial court was within its discretion to prevent evidence of the settlement offer based on HRE Rule

---

9. Similarly, on appeal Yang argues that "[t]he purpose for admitting the evidence was to show [his] actions after the problem arose."

10. We note that despite the trial court's ruling, the jury was privy to at least some information about Yang's efforts to solve the dispute. For example, the trial court allowed the following testimony about Yang's actions:

> [HAN'S COUNSEL] [Reading Cho's deposition testimony]:
> "Question: Were you trying to get a hold of Mr. Han?
> "Answer: I didn't try.
> "Question: Why didn't you try?
> "Answer: I told Mr. Yang.
> "Question: So you just leave [sic] everything up to him?
> "Answer: Yes.
> "Question: Even when you got the first letter from Mr. Au, June 22nd, you still leave [sic] it up to Mr. Yang?
> "Answer: Yes.
> "Question: Even when you got the second letter, July 11, you still leave [sic] it up to Mr. Yang?

> "Answer: Yes. He said he take care of this [sic]."
> . . . .
> [YANG'S COUNSEL]: After there was a problem, and you realized there was, Mr. Cho didn't want to sell it to Mr. Han anymore, for whatever reason, did you make an effort to try to get this thing solved?
> [YANG]: Yes.
> [COUNSEL]: Did you solve it? Without telling us any results, did you solve it?
> [YANG]: I thought I did.
> [COUNSEL]: What changed what you thought—I mean, why—you thought you had it resolved between them; what changed?
> The trial court then cautioned Yang about introducing evidence of the offer, but allowed the preceding questioning to stand:
> THE COURT: What you elicited so far is the fact that your client made an effort to try and resolve this.
> [COUNSEL]: Right.
> THE COURT: Okay. It's apparent to the jury, and he's already testified that it was unsuccessful. All right, nothing further. Absolutely nothing further.

403.[11] We believe it was reasonable for the trial court to conclude that the offer could be confusing, misleading, prejudicial, and against public policy. Cho's promissory note was not a carefully drafted settlement agreement. It did not contain any disclaimer of liability and no releases from further claims against either Cho or Yang. As a result, it was entirely possible that the jury could have, despite a cautionary instruction, interpreted the promissory note as an admission of liability by Cho.

■ This type of scenario falls squarely within the parameters of HRE Rule 408. The federal rule, which mirrors the language of HRE Rule 408, was developed to prevent these types of admissions and encourage the resolution of problems through negotiation and settlement without the fear of having statements made during the negotiation process haunt a future legal proceeding. 10 J. Moore, *Moore's Federal Practice* § 408.01[7] (2d ed. 1996) (citing S. REP. NO. 650, 93 Cong., 1st Sess. (1973)). This type of result would hamper the negotiation and settlement process of our legal system and is therefore against the public policy of this jurisdiction.

We review the trial court's exclusion of the settlement offer from the perspective of the dispute between Han and Yang. If the trial only involved Han and Yang, perhaps Cho's settlement offer would have been admissible under HRE Rule 408 to negate Han's claim that Yang did nothing when the problem was presented to Yang. Nevertheless, as long as the Han/Yang and Han/Cho disputes were tried in one trial, we conclude that the trial court was right and did not abuse it's discretion in its decision to exclude the evidence of Cho's settlement offer. Yang should have sought a separate trial, but the trial court had no duty to *sua sponte* order severance.

Accordingly, we hold that the trial court did not err in its granting of Cho's motion *in limine* as well as in its decision to exclude evidence of Cho's settlement offer. We believe our disposition of Yang's argument here also disposes of Yang's complaint regarding his motion for mistrial.

### C. Evidence Of Other Real Estate Transactions

Yang's next contention is that the trial court should not have admitted evidence of other real estate and loan transactions between Yang and Cho that were unrelated (in other words, irrelevant) to the Nāmauʻu Drive transaction. In the alternative, he argues that "whatever probative value the evidence may have had was far outweighed by its prejudicial effect and potential to mislead the jury." We disagree.

### 1. Standard of Review

■ A trial court's decision on HRE Rule 401 [12] can yield only one correct result. Consequently, the trial court's decision to allow the evidence of other real estate transactions is reviewed under the right/wrong standard. *Kealoha*, 74 Haw. at 319–20, 844 P.2d at 676. By contrast, the trial court's decision that the evidence was more probative than prejudicial under HRE Rule 403 requires, as we previously stated, a judgment call and is reviewed for abuse of discretion. *Id.*

### 2. The Trial Court Did Not Err in Admitting Evidence of Other Real Estate and Loan Transactions

In the proceedings below, the trial court permitted Han to introduce evidence of other real estate transactions between Yang and Cho that occurred before the transaction involving the Nāmauʻu Drive property. Yang specifically objects to evidence of two transactions (Lusitana and St. Louis) where he helped Cho purchase investment property sometime before 1989 and in 1990. Both

---

11. This rule of evidence provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Hawaiʻi Rules of Evidence (HRE) Rule 403.

12. This rule provides: " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." HRE Rule 401.

properties were sold for a profit shortly after being purchased. Additionally, Yang objects to evidence admitted about loan transactions between Yang and Cho. Han was permitted to elicit testimony that Cho had previously loaned $50,000 to Yang and co-signed a note at the bank for Yang to borrow $106,000 for a release of mortgage.

During a bench conference, the trial court explained its rationale for overruling Yang's objection to evidence of the St. Louis property transaction:

> THE COURT: Because it goes, as according to the offer of proof by [Han], with regards to the business relationship amongst all of the parties in this case [sic]. Therefore, I'm going to reconsider my earlier ruling and allow the testimony with regards to the St. Louis property.
>
> . . . .
>
> The issue is there's a breach of fiduciary duty, okay. The question is whether or not Mr. Yang should have disclosed to Mr.—the plaintiff, Mr. Han, in this case of this [sic] St. Louis transaction.

In essence, the trial court believed that because Yang was a fiduciary in a dual representation role, he had a duty to disclose all material facts, including prior business dealings with one of the parties.[13]

Support for the trial court's HRE Rule 401 ruling is found in *Property House, Inc. v. Kelley*, 68 Haw. 371, 715 P.2d 805 (1986). In that case, the Hawai'i Supreme Court addressed the rules of law that oversee a real estate broker's relationship with his or her principal. *Property House* involved an undisclosed dual representation similar to Yang's arrangement with Cho and Han.

■ In holding that the agent should be deprived of its commission, the supreme court explained the parameters of a broker's legal responsibilities in real estate transactions. For instance, the court held that "[t]he rules of agency apply to the relationship between a real estate broker and principal." *Id.* at 377, 715 P.2d at 810 (citing

*Miller v. Berkoski*, 297 N.W.2d 334, 338 (Iowa 1980)). A real estate broker is a fiduciary and consequently must exercise the "utmost good faith, integrity, honesty, and loyalty," and must diligently uphold a legally imposed duty of due care. *Id.* (citing *Rose v. Showalter*, 108 Idaho 631, 632, 701 P.2d 251, 252 (1985)). "In particular," the supreme court explained, "a real estate agent bears a duty to make a full, fair, and timely disclosure to the principal of all facts within the agent's knowledge [that] are, or may be, material to the transaction and [that] might affect the principal's rights and interests or influence his [or her] actions." *Id.* (citing *Mersky v. Multiple Listing Bureau of Olympia, Inc.*, 73 Wash.2d 225, 229, 437 P.2d 897, 899 (1968)) (citation omitted). The court further cited the Restatement (Second) of Agency on this issue, which explains that "[u]nless otherwise agreed, an agent is subject to a duty to use reasonable efforts to give his [or her] principal information [that] is relevant to affairs entrusted to him [or her] and which, as the agent has notice, the principal would desire to have . . . ." *Id.* (quoting Restatement (Second) of Agency § 381, at 182 (1958)).

■ We conclude that Yang's prior business dealings with Cho did have a tendency to make Yang's alleged breach of fiduciary duty more probable. *See* HRE Rule 401. Yang was bound by his duty of loyalty to make a full, fair, and timely disclosure to Han about prior dealings that could have been material to the Nāmau'u Drive transaction and that might have affected or influenced Han's rights or actions. *See Property House*, 68 Haw. at 377–78, 715 P.2d at 810. Han could have opted to forego retaining Yang as a broker if he knew that Yang and Cho had prior intimate relationships involving the purchase and resale of investment property and substantial loan transactions. In our opinion, a reasonable principal in Han's position would "desire to have" information about the Lusitana and St. Louis transactions as well as Cho's $50,000 loan to

---

13. Yang objected to the testimony involving the loan transactions, but the trial court overruled the objections without explanation. We believe, however, that the trial court's earlier ruling on the St. Louis property evidence encompassed all evidence relating to prior business dealings between the parties.

Yang and Cho's co-signature on Yang's $106,-000 note for the release of mortgage. *See id.* Accordingly, because evidence of prior similar financial transactions between Yang and Cho were relevant to Yang's duty of loyalty, we hold that the trial court correctly found that the evidence was relevant pursuant to HRE Rule 401.

The determination that evidence is relevant does not end the analysis. To pass muster, relevant evidence must survive the balancing test in HRE Rule 403.

Yang argues that "whatever probative value the evidence may have had was far outweighed by its prejudicial effect and potential to mislead the jury." He is mistaken. An agent's fiduciary duty, which carries with it the duty of full, fair, complete, and timely disclosure of material facts, is among the most important obligations in our legal system. Evidence that a fiduciary did not disclose relevant information concerning the scope of the representation does not, as a general proposition, result in unfair prejudice. Furthermore, in this case, we do not believe that the probative value of prior business dealings was far outweighed by the danger of misleading the jury. The issue was not, as Yang argues, whether the trans-

actions were somehow connected to the Nāmau'u Drive property, but whether Yang had a duty to disclose the information and whether Han (or any reasonable principal) would have wanted the information. Therefore, we hold that the trial court did not abuse its discretion in overruling Yang's objections based on HRE Rule 403.

### D. *Admissions*

Yang's next argument is not entirely clear. His point of error states that "the trial court erred in preventing [him] from impeaching [Han] with a factual admission contained in [paragraph four of Han's] complaint." [14] The point of error appears to implicate HRE Rules 613,[15] 802.1(1) [16] and 803(a)(1).[17] Nevertheless, we review the alleged error under HRE Rule 803(a)(1) because Yang's argument before the trial court and in his appellate brief explicitly raises the issue of an admission by a party opponent, but does not explicitly implicate impeachment by a prior inconsistent statement.

### 1. *Standard of Review*

On this issue, because the trial court ruled that the factual assertions in the complaint

---

**14.** Paragraph four of Han's complaint reads:

[T]he Defendant Yang represented to the Plaintiffs Han that he would be representing the Plaintiff, as a real estate broker, and the Defendant Cho in the real estate transaction, and in consideration for his services, the Defendant Yang requested and was paid TEN THOUSAND AND NO/00 DOLLARS ($10,000.00) in cash by the Plaintiff Han.

**15.** The relevant portion of HRE Rule 613 reads as follows:

In examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown nor its contents disclosed to the witness at that time, but on request the same shall be shown or disclosed to opposing counsel. . . . Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless, on direct or cross-examination, (1) the circumstances of the statement have been brought to the attention of the witness, and (2) the witness has been asked whether the witness made the statement.

HRE Rule 613(a) & (b).

**16.** This rule on prior inconsistent statements says, in part:

The following statements made by witnesses who testify at the trial or hearing are not excluded by the hearsay rule:

(1) Inconsistent statement. The declarant is subject to cross-examination concerning the subject matter of the declarant's statement, the statement is inconsistent with the declarant's testimony, the statement is offered in compliance with rule 613(b), and the statement was:

(A) Given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition; or

(B) Reduced to writing and signed or otherwise adopted or approved by the declarant. . . .

HRE Rule 802.1(1).

**17.** This exception to the hearsay rule provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . . A statement that is offered against a party and is (A) the party's own statement, in either the party's individual or a representative capacity, or (B) a statement of which the party has manifested the party's adoption or belief in its truth.

HRE Rule 803(a)(1).

would be "confusing" and "misleading to the jury," the abuse of discretion standard of review applies. *Kealoha*, 74 Haw. at 319, 844 P.2d at 675.

## 2. *Factual Assertions in a Complaint are Judicial Admissions*

There is scant authority from our supreme court on the issue of whether factual assertions in a complaint are judicial admissions.[18] The supreme court has not addressed the issue in eleven years. And the opinion "addressing" the issue more than a decade ago was merely a footnote reference explaining: "[i]t is well established that a party's factual allegation in a complaint or other pleading is a judicial admission which binds the party." *International Bhd. of Elec. Workers, Local 1357 v. Hawaiian Tel. Co.*, 68 Haw. 316, 320 n. 2, 713 P.2d 943, 949 n. 2 (1986) (citing *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir.1985); *Cooke Trust Co. v. Edwards*, 43 Haw. 226, 229 (1959)) (citation omitted).

Similarly, two cases flirted with the issue in 1958 and 1959. In the 1959 case, the court in passing stated: "it is well settled that admissions in the pleadings of a party are competent and material as admissions of fact and make unnecessary proof of additional facts and all reasonable inferences to be drawn from such facts...." *Cooke Trust Co.*, 43 Haw. at 229 (citing *Sasaki v. Nakamura*, 26 Haw. 178 (1921); *Lalakea v. Laupahoehoe Sugar Co.*, 33 Haw. 745 (1936)).

In the 1958 case, the supreme court provided a succinct but somewhat more expansive analysis of the issue in *Tugaeff v. Tugaeff*, 42 Haw. 455 (1958). *Tugaeff* was a divorce case involving an equity suit for injunction, discovery, accounting, and recovery of personal property. The petitioner sought, among other things, payment of one-half of funds allegedly withdrawn by the respondent from their joint account at Bank of Hawaii.

The trial court entered a judgment in favor of the petitioner and the respondent appealed. On appeal, the respondent argued that the trial court should not have admitted ledger sheets, withdrawal orders, and a deposit slip showing the respondent's purported withdrawals from the bank account because there was no evidence linking the documents to the respondent and there was no proof that the names of the petitioner and the respondent appeared on the documents.

The supreme court disagreed, holding that there was indeed evidence that "tied up the documents with the petitioner and the respondent." *Id.* at 465. The pleadings provided the supreme court with the foundation to reach this conclusion. Specifically, the supreme court concluded that a factual assertion in the respondent's amended answer was tantamount to an admission:

> The petitioner alleged in her petition that she deposited the earnings of Tugaeff Flooring Service in an account in her name at Bank of Hawaii; that the account was later changed to a joint account in her name and the name of the petitioner; that on March 23, 1944, there was $19,243.24 in the account; that on that day the respondent withdrew $19,000.00 from the account; and that on March 28, 1944, he withdrew the balance of the account. In his amended answer, the respondent did not deny those allegations but merely stated "that the various deposits of money made by petitioner to her accounts were of money earned solely by respondent; * * * that most of the said sum has been reinvested in the aforesaid business." By the quoted statements, the respondent impliedly admitted the alleged deposits and withdrawals.

*Id.* (alteration in original).

The court then expanded on its conclusion regarding the respondent's complaint:

> cur in a variety of instances, including where a party has: "(1) conceded the truth of a fact, (2) or, assented to a specific mode of evidencing it, (3) or, waived the introduction of a specific piece of evidence, (4) or, waived the prohibition or limited conditions of a specific rule of evidence." C. Wright & K. Graham, *Federal Practice & Procedure* § 5194, at 193 (1978).

---

18. "A judicial admission is a formal statement, either by [a] party or his or her attorney, in [the] course of [a] judicial proceeding [that] removes an admitted fact from [the] field of controversy. It is a voluntary concession of fact by a party or a party's attorney during judicial proceedings." 29A Am.Jur.2d *Evidence* § 770, at 137 (1994) (footnotes omitted). Judicial admissions can oc-

An admission of fact need not be made specifically, but may be the result of clear implication from statements in a pleading. If the documents which were properly admitted in evidence are considered in connection with the petitioner's allegations and the respondent's admission of such allegations, it is clear that the persons whose names appeared on the documents were the petitioner and the respondent....

*Id.* (emphasis added).

A number of jurisdictions (both federal and state) have addressed the issue and reached a conclusion similar to *Cooke* and *Tugaeff. See, e.g., Schott Motorcycle Supply, Inc. v. American Honda Motor Co.,* 976 F.2d 58, 61–62 (1st Cir.1992); *Campbell v. Sonat Offshore Drilling, Inc.,* 979 F.2d 1115, 1119 (5th Cir.1992); *American Title Ins. Co. v. Lacelaw Corp.,* 861 F.2d 224, 226 (9th Cir.1988); *Brummet v. Farel,* 217 Ill. App.3d 264, 160 Ill.Dec. 278, 280, 576 N.E.2d 1232, 1234 (1991); *Sinha v. Dabezies,* 590 So.2d 795, 798 (La.Ct.App.), *cert. denied,* 592 So.2d 1315 (La.1992); *First Tennessee Bank, N.A. v. Mungan,* 779 S.W.2d 798, 801 (Tenn. Ct.App.1989). In light of the foregoing Hawai'i cases, and the persuasive authority from other jurisdictions, we hold that factual assertions in a complaint are judicial admissions that bind a party and that the admitted facts in a complaint are removed from the field of controversy. *International,* 68 Haw. at 320 n. 2, 713 P.2d at 949 n. 2; *Cooke Trust Co.,* 43 Haw. at 229. Consequently, the factual assertions need not hurdle the Hawai'i Rules of Evidence. It is unnecessary to prove additional facts or any other reasonable inferences. *Id.* But we agree with the Supreme Court of Missouri that "pleadings cannot be regarded as evidence unless the pleadings are introduced [during] the trial at the proper time and in the proper way." *Lammers v. Greulich,* 262 S.W.2d 861, 864 (Mo.1953) (internal quotation marks and citations omitted).[19]

### 3. The Trial Court Did Not Abuse its Discretion When it Prevented Yang from Using a Complaint That Was Not Introduced Into Evidence

Yang contends that one of Han's major arguments during the trial was that Yang failed to disclose his dual representation to Han at the time of the sale. As the following excerpt reveals, Yang responded by trying to elicit from Han that he was in fact aware of the arrangement:

[YANG'S COUNSEL]: Mr. Han, you told your attorney, Mr. Au, that Min Ho [Yang] told you from the very beginning that he was representing you and Mr. Cho in the real estate transaction, right?

[HAN]: I don't know anything else so [sic] I only know Mr. Yang is my friend and my broker, and he introduced that property.

[YANG'S COUNSEL]: May I, Your Honor?

THE COURT: Yes, you can approach.

[YANG'S COUNSEL]: Mr. Han, I'm going to show you a copy of the complaint in this case. This is the paper that was filed on your behalf to start this whole lawsuit.

[HAN'S COUNSEL]: Excuse me. May we approach the bench[?]

In the bench conference that followed the preceding exchange, Yang argued that paragraph four of Han's complaint explicitly stated that Han knew about the dual representation. Specifically, he argued that the paragraph should be considered an admission by a party opponent:

THE COURT: Okay. So what do you intend to do with the complaint?

[YANG'S COUNSEL]: Nothing more than just to [sic] show it to him.

THE COURT: And ask him whether or not if [sic] he read it before it was filed.

[YANG'S COUNSEL]: No.... I intend to make the statement in the complaint an admission by a party in the case with

---

**19.** Although the Missouri Supreme Court goes on to hold that "[s]tatements in pleadings when offered in evidence should be subject to the rules of evidence[,]" *Lammers v. Greulich,* 262 S.W.2d 861, 865 (Mo.1953), we believe that part of the court's opinion is inconsistent with our conclusion that the statements are judicial admissions. Hence, we do not endorse that portion of the *Lammers* decision.

regard to the disclosure of representation. . . .

Han countered by arguing that the complaint was not in evidence and not verified:

[HAN'S COUNSEL]: In the first place, Your Honor, the complaint is not in evidence so you cannot read to the jury what's not in evidence until it is in evidence. . . . [I]t's not a verified complaint. It's not verified under oath.

Yang then argued that Han's complaint should be a binding admission based on Han's deposition testimony, where Han's counsel essentially stated that everything in the complaint was accurate:

[YANG'S COUNSEL]: . . . [H]ere's what happened on page 91 of the deposition of Mr. Han taken May 14th, 1993 starting at line 3. My question was:

"What is your claim in this case against Mr. Cho and Mr. Yang?"

And [Han's counsel] represented "It's laid out in the complaint."

Then we went on and I said, "Okay, then if—"

And [Han's counsel] interrupted me and said, "It speaks for itself."

I went on and asked him [sic] we're trying to get his lay understanding of his claims against Mr. Cho and Mr. Yang.

[Han's counsel], on page 92, line 11, says:

"The complaint speaks for itself. We're bound by the complaint. Let's move on."

I said: "Are you instructing him not to answer?

[Han's counsel]: "I'm instructing him not to answer."

The trial court was not persuaded by Yang's argument. Without expressly addressing the issue of judicial admissions, the court refused to allow Yang to show the complaint to Han:

THE COURT: I'm going to sustain the objection at this time. There's been no evidence that the witness has either read, understood or adopted whatever the allegations are contained in the complaint. And [sic] rule that an admission for reading of any portion of the complaint at this time which is not in evidence would be confusing, misleading to the jury.

[YANG'S COUNSEL]: Your Honor, is this Court ruling a statement in a pleading of a party is not an admission by the party?

THE COURT: I've made my ruling, [counsel].

In our opinion, the court did not preclude the admission of the complaint, the court merely ruled that Yang must properly introduce the complaint into evidence. It was up to Yang to offer the complaint after the court's ruling.

Herein lies the fatal flaw in Yang's argument. He made no attempt to introduce the complaint into evidence as a judicial admission after the court's ruling, nor did he ask the court to take judicial notice of the pleadings. *See Page v. Lewis*, 902 S.W.2d 359, 360 (Mo.Ct.App.1995) (citing *Kelsey v. Nathey*, 869 S.W.2d 213, 217 (Mo.Ct.App.1993)). Consequently, we hold that the trial court did not abuse its discretion when it refused to allow Yang to use paragraph four because the complaint was not introduced during the trial at the proper time and in the proper way. *Lammers*, 262 S.W.2d at 864.

### E. *Treble Damages*

Finally, Yang contests the manner in which the trial court computed treble damages. He claims that the trial court awarded three times compensatory damages plus compensatory damages, and that the net effect was quadruple instead of treble damages. We agree.

### 1. *Standard of Review*

 Han argues that "[t]he issue of 'quadrupling' was not raised below" and has therefore "been waived on appeal." Han is correct in one respect: Yang's appellate brief does not show where in the record the alleged error was objected to. *See* Hawai'i Rules of Appellate Procedure Rule 28(b)(6). "The general rule is that an issue [that] was not raised in the lower court will not be considered on appeal. An appellate court will deviate from this rule only when justice

so requires.'" *Kernan v. Tanaka,* 75 Haw. 1, 35, 856 P.2d 1207, 1224 (1993) (quoting *Hong v. Kong,* 5 Haw.App. 174, 177, 683 P.2d 833, 837 (1984) (citations omitted)). We believe justice so requires on this issue because it involves a potential forfeiture. *Cf. Caldeira v. Sokei,* 49 Haw. 317, 325, 417 P.2d 823, 828 (1966) ("Cases are legion holding that the courts abhor a forfeiture and they will construe a clause as a covenant rather than a condition if it is possible to do so.") (internal quotation marks and citations omitted). We therefore review the trial court's computation of treble damages for plain error.

### 2. *Deceptive Trade Practices and Treble Damages*

 There are two statutes that combine to permit a trial court to award treble damages to consumers. The first is Hawai'i Revised Statutes (HRS) § 480–2. The relevant portion of this statute states: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." HRS § 480–2(a) (1993). "A practice is unfair when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Rosa v. Johnston,* 3 Haw.App. 420, 427, 651 P.2d 1228, 1234 (1982) (quoting *Spiegel, Inc. v. F.T.C.,* 540 F.2d 287, 293 (7th Cir.1976)) (brackets omitted) (citation omitted). The statute "outlaws unfair methods of competition and unfair or deceptive trade practices in sweeping terms." *Island Tobacco Co. v. R.J. Reynolds Tobacco Co.,* 63 Haw. 289, 300, 627 P.2d 260, 268 (1981). It "was constructed in broad language in order to constitute a flexible tool to stop and prevent fraudulent, unfair or deceptive business practices for the protection of both consumers and honest businessmen [and businesswomen]." *Ai v. Frank Huff Agency, Ltd.,* 61 Haw. 607, 616, 607 P.2d 1304, 1311 (1980) (footnote omitted).

Once a consumer is injured by unfair or deceptive trade practices, a second statute, HRS § 480–13, may then be used to award treble damages. This statute provides, in part:

Any consumer who is injured by any unfair or deceptive act or practice forbidden or declared unlawful by section 480–2:

(1) May sue for damages sustained by the consumer, and, if the judgment is for the plaintiff, the plaintiff shall be awarded a sum not less than $1,000 or threefold damages by the plaintiff sustained, whichever sum is the greater, and reasonable attorneys fees together with the costs of suit. . . .

HRS § 480–13(b) (1993).

 Treble damages are a form of deterrence and hence serve a purpose similar to punitive damages. "A legislative purpose of HRS § 480–2 was the deterrence of 'fraudulent, unfair or deceptive business practices.'" *Eastern Star, Inc. v. Union Bldg. Materials,* 6 Haw.App. 125, 142, 712 P.2d 1148, 1159 (1985) (quoting *Ai,* 61 Haw. at 616, 607 P.2d at 1311). But "an award of both treble damages and punitive damages for the same act constitutes improper double recovery." *Id.* (citing *John Mohr & Sons, Inc. v. Jahnke,* 55 Wis.2d 402, 198 N.W.2d 363 (1972)). Thus, "the recovery should be either treble damages *or* punitive damages, whichever is the greater amount." *Id.,* at 142, 712 P.2d at 1160.

### 3. *The Trial Court Improperly Awarded Quadruple Damages*

When the jury returned its special verdict, it awarded Han $61,800 in special damages and $5,000 in general damages. The jury determined that Cho was sixty-five percent responsible and Yang thirty-five percent responsible for the $66,800 in compensatory damages. In addition, the jury assessed $75,000 in punitive damages against Cho and $50,000 in punitive damages against Yang. The jury also found, among other things, that Yang engaged in unfair or deceptive practices in his dealings with Han.

Following the special verdict, the trial court entered its judgment affirming the jury's verdict in all respects, except substituting a $70,140 treble damages award in place of the jury's $50,000 punitive damages

award against Yang.[20] Additionally, the trial court, as evidenced by the following excerpt from the judgment, gave Cho a right of contribution and indemnity against Yang:

> IT IS FURTHER ADJUDGED AND DE-CREED, pursuant to the special verdict returned by the jury on May 25, 1993, that Defendant Han Kun Cho shall have judgment on his Crossclaim against Defendant Min Ho Yang so that Defendant Han Kun Cho shall be entitled to indemnification or contribution from Defendant Min Ho Yang to the extent that Defendant Han Kun Cho satisfies the Plaintiff's special and general damage award in a proportion greater than Sixty–Five Percent (65%).

Yang relies on supreme court precedent to support his contention that quadruple damages are unlawful. In *Leibert v. Finance Factors, Ltd.*, 71 Haw. 285, 788 P.2d 833 (1990), an unfair or deceptive trade practices case, the supreme court briefly addressed the issue of HRS §§ 480–2 and 480–13. The court was faced with a trial court judgment of three times actual damages plus compensatory damages. The following passage captures the essence of the supreme court's holding:

> [T]he court below committed ... error[ ].... [I]t allowed the appellees to recover ... $172,321.94 plus three times that amount under HRS Sec. 480–2 and 480–13. Thus, appellees recovered four times actual damages. Since this was a suit in tort, and since there was no breach of contract documents as executed, there could not be a recovery under the contract, and appellees were entitled only to triple, not quadruple damages.

*Id.* at 293, 788 P.2d at 838.

■ We believe the rule of law that can be gleaned from *Leibert* is this: when a litigant is entitled to treble damages under HRS § 480–13, the trial court shall not award three times compensatory damages plus compensatory damages. The proper measurement of treble damages is simply three times compensatory damages.

We are confronted with a scenario similar to that faced by the supreme court in *Leibert.* In our case, the trial court held Yang jointly and severally liable for the compensatory damages of $66,800, and also liable for treble damages of $70,140. Since this would allow Han to collect 35% of the compensatory damages and an additional $70,140 from Yang, the net effect of the judgment would be a quadruple award prohibited by *Leibert.* It is true that Han could collect all of the compensatory damages from Cho. But since Cho could then seek $23,380 in contribution and indemnification from Yang, Yang would be subject to a forfeiture of $23,380, which, with his liability for an additional $70,140, would result in a quadruple award. We hold, therefore, that the trial court committed plain error in its computation of treble damages against Yang.

We believe, however, that the trial court's award of treble damages would be legally right if the following conditions were imposed:

(1) Of the compensatory damages and treble damages award, Han can only collect the compensatory damages of $66,800 from Cho and/or Yang and an additional $46,700 from Yang, for a maximum of $113,560; and

(2) Of the compensatory damages and treble damages award, Yang shall be entitled to indemnification and contribution from Cho to the extent that Yang pays more than $70,140 to Han.

### III. CONCLUSION

Accordingly, we affirm the June 17, 1993 judgment, except we vacate that portion that awarded treble damages against Yang, which we remand with instructions to enter an amended judgment awarding Han treble damages in the same amount of $70,140, but with the conditions specified hereinabove and consistent with this opinion.

---

**20.** The trial court computed treble damages by taking Yang's thirty-five percent share of the compensatory damages (66,800 × .35 = $23,- 380) and multiplying the share by three ($23,380 × 3 = $70,140).